FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP 24  PM 5: 00

LORETTA G. WHYTE
CLERK

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC. AND** | * | **CIVIL ACTION** |
| **WILLIAM DICKERSON** | * | **NO. 00-0049** |
|     **Plaintiffs** | * | |
| | * | |
|       **VERSUS** | * | **SECTION "S"** |
| | * | |
| **ARAMARK, INC., FORMERLY** | * | |
| **KNOWN AS A.R.A., INC.; AND** | * | **MAGISTRATE "5"** |
| **JOSEPH NEUBAUER** | * | |
|     **Defendants** | * | |
| | * | |

*   *   *   *   *   *   *   *

### ARAMARK'S MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
### SECOND AMENDED COMPLAINT

**MAY IT PLEASE THE COURT:**

Defendant, ARAMARK Sports and Entertainment Services, Inc. ("ARAMARK" or "Defendant"), through undersigned counsel, respectfully submits this Memorandum in Opposition to the Motion for Leave to Amend Complaint to Add Additional Party filed by plaintiffs, William D. Dickerson ("Dickerson") and Exquisito Services, Inc. ("Exquisito") (collectively, "Plaintiffs") on August 23, 2001. Under the prevailing standards articulated by the United States Fifth Circuit Court of Appeals, such an amendment should not be allowed because it seeks to join a nondiverse party which is not an indispensable party solely to deprive this Court of jurisdiction over a matter that has been before it for more than a year and a half. For the reasons set forth below, Defendants ask that

this Court deny this new Motion for Leave.

Additionally, in their Memorandum in Support of Motion for Leave, Plaintiffs challenge this Court's diversity jurisdiction. ARAMARK removed this case from state court by Notice of Removal on January 6, 2000, asserting the jurisdictional basis of diversity of citizenship pursuant to 28 U.S.C. §1332. ARAMARK herein establishes that the amount in controversy supports this Court's jurisdiction over this controversy. In its argument below, Defendant ARAMARK addresses Plaintiffs' challenge to this Court's subject-matter jurisdiction first, followed by ARAMARK's argument regarding the impropriety of joinder of an additional party.

I.    **STATEMENT OF FACTS**

Plaintiffs, originally *pro se*, filed this suit in the Civil District Court, for the Parish of Orleans, State of Louisiana, on October 13, 1999, and named two defendants, ARAMARK and Joseph Neubauer ("Neubauer"). Defendant ARAMARK is a corporation organized under the laws of Delaware with its principal place of business in the State of Pennsylvania.[1] Defendant Neubauer, an employee of a related ARAMARK entity,[2] is a citizen and resident of Pennsylvania Plaintiffs' state court petition ("Original Petition") asserted a claim for bad faith breach of contract against the Defendants Plaintiffs alleged that Plaintiffs and Defendants entered into a joint venture "to provide food services to the City of New Orleans Convention Center." Original Petition ¶ 3. Plaintiffs alleged

---

[1] ARAMARK is the successor to ARA Leisure Services, Inc , which was the party to the Joint Venture/Partnership Agreement.

[2] In the Answer filed on July 12, 2001, Defendants averred Neubauer's lack of involvement with any of the matters alleged by Plaintiffs and presumed the affirmative defense of lack of personal jurisdiction

that the defendants, acting deceptively and in bad faith, unilaterally and without legal cause canceled the joint venture agreement. Original Petition ¶¶ 4, 5. Plaintiffs further alleged that the Defendants continued to provide food services "pursuant to the original contract with the City of New Orleans Convention Center," and therefore, that Plaintiffs had been deprived of its share in the profits under the joint venture agreement from 1989 to the present. Original Petition ¶¶ 5, 6. The Original Petition was never properly served on either defendant, as prescribed by Federal Rule of Civil Procedure 4 or under state law. Defendant Neubauer did receive a copy of the Petition some two months after suit was filed, on December 13, 1999; however, the form of transmittal to him did not constitute proper service on either of the defendants. Thereafter, on January 6, 2000, defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1441.[3]

On May 25, 2000, and again on October 18, 2000, this Court entered Orders requiring Plaintiffs, on peril of dismissal without notice for failure to comply, to show good cause in writing within thirty (30) days why service of process had not been effected on the defendants. Plaintiffs still did nothing. As a result, on December 6, 2000, the Court dismissed the case.

One week later, on December 13, 2000, Plaintiffs, *pro se*, filed their first Motion for Reconsideration. In response, the Court required Plaintiffs to appear with their counsel on January

---

[3]Although Plaintiffs now seek to cast doubt on the propriety of that removal, suggesting that the diversity jurisdictional amount of $75,000 has not been established (there is no dispute that the parties at the time of removal were completely diverse), no such objection was ever timely filed, as it should have been to preserve the right to seek remand 28 U.S.C. §1447(c); *see Davis v. Ciba-Geigy Corp.*, 958 F. Supp. 264, 265-66 (M.D. La. 1997). Moreover, that Plaintiffs mailed discovery requests to Defendants' counsel on September 13, 2000, and filed a First Amended Complaint, strongly argues that Plaintiffs have waived any objection to removal. *See Koehnen v. Herald Fire Ins.Co.*, 89 F.3d 525, 528-29 (8th Cir. 1996).

10, 2001, for a hearing on the Motion. Neither Plaintiffs nor their counsel appeared for the hearing, although counsel for defendants did appear. The Court denied Plaintiffs' Motion for Reconsideration. An Order of Dismissal was again filed into the record on January 10, 2001, and entered on the docket on January 11, 2001.

It appears that sometime later on January 10, 2001, Plaintiffs' counsel filed a Motion to Enroll as counsel of record. The Motion to Enroll was signed by the Court on January 11, and was entered on the docket sheet on January 12. A second Motion for Reconsideration of the December 6, 2001, dismissal of the case was filed by Plaintiffs' newly enrolled counsel on February 2, 2001, and on May 1, 2001, this Court granted Plaintiffs' second Motion for Reconsideration.

Thereafter, on June 22, 2001, counsel for Plaintiffs filed a First Amended Complaint. The First Amended Complaint did not incorporate the allegations of the Original Petition and did not name any additional defendant   Although it was apparently intended to supplement the allegations contained in the Original Petition, the First Amended Complaint did not add any new claims or defendants. The First Amended Complaint, like the Original Petition, asserted a cause of action for bad faith breach of the Joint Venture/Partnership Agreement. First Amended Complaint, ¶¶ IX, X, XI. The First Amended Complaint further specified that damages should be awarded based on lost anticipated profits, on lost business opportunity and on bad faith dealing, and attached as exhibits two contracts: (1) the Joint Venture/Partnership Agreement between ARAMARK and Plaintiffs, dated December 13, 1983; and (2) the Food/Beverage Concession Contract for the New Orleans Convention Center, also dated December 13, 1983. First Amended Complaint, ¶¶ XII, XIII.

Significantly, both the Original Petition and the First Amended Complaint alleged that upon

the breach of the joint venture agreement, Defendant ARAMARK continued and continues to provide services to the New Orleans Convention Center. Original Petition ¶ 6; First Amended Complaint ¶¶ VIII, XIII. Also significantly, both the Original Petition and the First Amended Complaint alleged that Plaintiffs' participation in the joint venture contract helped satisfy the City of New Orleans minority set-aside program requirement, which thus facilitated the Joint Venture's contract with the New Orleans Convention Center. Original Petition ¶ 3; Amended Complaint ¶¶ V, XI.

Defendants ARAMARK and Neubauer answered the First Amended Complaint, which was the first complaint served on either defendant, and denied the allegations. In addition, defendant Neubauer also has asserted the affirmative defense of lack of personal jurisdiction.

Plaintiffs filed this Motion for Leave to file a second amended complaint to add a party. Plaintiffs now seek to amend the complaint by adding a new defendant, the New Orleans Convention Center The allegations in the proposed Second Amended Complaint are virtually identical to those in the First Amended Complaint, except for the addition of two paragraphs, in which Plaintiffs allege for the first time a breach of an unspecified duty on the part of the New Orleans Convention Center to Plaintiffs under the public bid law Second Amended Complaint, ¶¶ VII and IX.[4]

## II.    LAW AND ARGUMENT

### A.    This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. §1332.

In their Memorandum in Support of Motion for Leave, Plaintiffs challenge this Court's

---

[4]The Paragraphs are incorrectly numbered in the Second Amended Complaint, starting after Paragraphs VI. Thus, the Paragraphs numbered VII and IX are actually paragraphs ten and eleven of the Second Amended Complaint.

subject-matter jurisdiction. ARAMARK removed this case from state court by Notice of Removal on January 6, 2000, asserting the jurisdictional basis of diversity of citizenship pursuant to 28 U.S.C. §1332. In its Notice of Removal, ARAMARK averred that "the alleged amount in controversy between each Plaintiff and the Defendants exceeds the sum of $75,000, exclusive of interests and costs, and the controversy is wholly between citizens of different states. . ." *See* Joint Notice of Removal, ¶III. ARAMARK herein provides further proof of this Court's subject matter jurisdiction over this controversy, based on 28 U.S.C §1332.

It is not disputed that complete diversity existed between the parties at the time the Notice of Removal was filed. Although the Motion for Leave seeks to add an additional defendant who would destroy diversity, that party has not been added at this time. Therefore, for purposes of determining whether this court has jurisdiction over the removed case, diversity of citizenship is not at issue.

**1.    ARAMARK has proved by a preponderance the amount in controversy exceeds $75,000.**

The Original Petition filed by Plaintiffs did not state any specific amount of damages, but rather stated the measure of damages as consisting of the Exquisito's "share in the profits that have been generated as a result of the joint venture agreement since 1989 to the present. . ." Original Petition, ¶6. The First Amended Complaint, filed by Plaintiff's counsel in June, 2001, likewise asserted the measure of damages under this breach of contract claim as "loss of anticipated profit contemplated by the contract as well as of lost business opportunity with the expansion of the Center. . ." for at least the four years remaining under the original terms of the Joint Venture/Partnership

6

Agreement. First Amended Complaint, ¶¶ X, XII. Therefore, at minimum, the amount in controversy may be described as what Exquisito would have received during the years of 1990 through 1993, pursuant to the terms of the Joint Venture/Partnership Agreement had the agreement not been canceled, and had it continued to its full term of ten years.

The Fifth Circuit has developed a "clear analytical framework for resolving disputes concerning the amount in controversy" where a state court case is removed to federal court and the amount in controversy is not expressly alleged in the plaintiff's state court pleading. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The Fifth Circuit has explained:

> In such a situation, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendant may make this showing in either of two ways· (1) by demonstrating that it is "facially apparent" that the claims are likely to above $75,000, or (2) "by setting forth facts in controversy – preferably in the removal petition, but sometimes by affidavit – that support a finding of the requisite amount."

*Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999), *quoting Luckett*, 171 F.3d at 298. In the instant case, it is not "facially apparent" on the state court petition that the claims are likely above $75,000  Thus, ARAMARK must set forth facts in controversy that support a finding of the requisite amount.

According to Fifth Circuit precedent, ARAMARK may meet its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000 by presenting "summary judgment-type" evidence to ascertain the amount in controversy. *Allen v. R & H Oil & Gas Co.*, 63 F 3d 1326, 1336 (5th Cir. 1995), *limitation of holding on other grounds recognized by Ard v. Transcontinental and Gas Pipe Line Corp.*, 138 F.3d 596 (5th Cir. 1998), *and by H&D Tire*

*Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326 (5th Cir. 2000); *Pruden v. Chevron Stations, Inc.*, 2001 WL 913836, *1 ( E.D. La., 8/14/01, No. 01-1695). ARAMARK, by affidavit attached hereto as Exhibit "A," sets forth facts which prove that the amount in controversy more likely than not exceeds $75,000. Exhibit "A" is an Affidavit of Deborah Vegh, the Southeastern Regional Finance Director of the Convention Center Division of ARAMARK. Based on her review of the available Joint Venture financial records which have been preserved, as well as ARAMARK's available financial records of its continued service contract with the New Orleans Public Facility Management, Inc. during the years of 1990 through 1993, Ms. Vegh states that the Total Operating Cash Flow are earned from ARAMARK's continued service contract with New Orleans Facility Management, Inc. did not decrease compared to the earnings for the years of 1987 to 1988 and 1988 to 1989.[5]

Based on this foregoing summary judgment-type evidence, ARAMARK respectfully requests that this Court find that ARAMARK has proved more likely than not that the amount in controversy exceeds $75,000, and that therefore, this Court has, and had at the time of removal, diversity jurisdiction pursuant to 28 U.S.C. §1332. *See Rodrigue v. Tetra Techs., Inc.*, 2000 WL 1610625 (E.D. La., 10/26/00, No. 00-2919) (finding that removal defendant proved by preponderance that the amount in controversy exceeded the jurisdictional amount).[6]

---

[5]Of course, ARAMARK reserves all of its rights to contest Plaintiffs' damage claims and evidence at trial. By the showing that it has made herein and in the attached affidavit, ARAMARK seeks only to satisfy the standard that the "amount *in controversy*" exceeds the jurisdictional amount.

[6]If the Court finds that ARAMARK has established by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional limit, the burden shifts to the plaintiff to show

2.     **The jurisdictional amount has been proved as to the real plaintiff in interest.**

The general rule for invoking diversity jurisdiction is that the jurisdictional amount must be proved as to each plaintiff asserting a claim, and that generally claims of individual plaintiffs may not be aggregated to meet the jurisdictional limit. *Allen*, 63 F.3d at 1330. However, in the instant case, there is only one real party in interest - Exquisito. The claims asserted by Plaintiffs arise from a breach of contract between Exquisito and ARAMARK. The entity which would have been harmed by the alleged breach of contract is Exquisito. According to Federal Rule of Civil Procedure 17(a), the capacity of an individual to sue is determined by the law of the individual's domicile. Under Louisiana law, a domestic corporation has the procedural capacity to enforce its rights in the corporate name. La. C.C.P. art. 690. Also under Louisiana law, a corporation's principal has no standing to pursue, as an individual, the corporation's breach of contract claim, unless the principal proves he suffered an injury separate from those of the corporation. *Eximco, Inc. v. Trane Co.*, 737 F.2d 505, 511 (5th Cir. 1984), *abrogated on other grounds by 9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989); *see Gendusa v. City of New Orleans*, 93-1527 (La. App. 4th Cir. 2/25/94), 635 So.2d 1158, 1162-1163, *writ denied*, 94-1508 (La. 9/23/94), 642 So.2d 1296. Unless an officer or shareholder can prove an injury suffered by them personally, "neither officers nor stockholders . . . can maintain an action to redress an injury to a corporation even though the value of their stock is impaired as a result of the injury." *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. (Ala) 1981);

---

with legal certainty that he will not be able to recover more than $75,000. *Rodrigue*, 2000 WL 1610625 at *2, *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411-1412 (5th Cir. 1995), *cert. denied*, 516 U.S. 865, 116 S.Ct. 180 (1995).

*Schaffer v. Universal Rundle Corp.*, 397 F.2d 893 (5th Cir. (Tex) 1968) (involving an action for breach of contract and anti-trust violations)  There are no allegations in either the Original Petition, the First Amended Complaint, nor in the proposed Second Amended Complaint which support a claim held by Dickerson, personally.  Therefore, this Court should find that Dickerson is not a real party in interest and should dismiss him from the suit, and for purposes of determining whether the jurisdictional amount is sufficient, should disregard Dickerson's appearance as a plaintiff.[7]

Alternatively, if the Court finds that Dickerson is also a proper party plaintiff, the aggregation of claims is allowed, "in the limited situation where two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Allen*, 63 F.3d at 1330, *quoting Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056 (1969).  While the inclusion of Dickerson as a party is unnecessary to enforce Exquisito's interest under the Joint Venture/Partnership Contract, even with Dickerson as a plaintiff in the suit, he has no more rights than those conferred through the contract, because his rights would be derivative, and moreover, he has asserted no claim separate from that of Exquisito's.  Therefore, for purposes of determining whether the jurisdictional amount is met with respect to all Plaintiffs, this Court should find either that both Plaintiffs have united "to enforce a single title or right in which they have a common and undivided interest," or that Dickerson is not a real party in interest in this case.  In either case, the Court should determine the amount in controversy only with respect to Exquisito.

---

[7]At an appropriate part in the proceedings, ARAMARK shall seek dismissal of Dickerson's purported claims.

**B.    This Court Should Deny Plaintiffs' Motion to Add a New Defendant.**

The New Orleans Exhibition Hall Authority ("NOEHA"), a political subdivision of the State of Louisiana, was created in 1978 to plan, build, maintain and operate the New Orleans Convention Center. Louisiana Acts 1978, No. 305, Sections 1, 4, & 5; Louisiana Acts 1997, No. 1176; La. R.S. 38:2233.2(E)(3). In order to accomplish its purpose, the NOEHA was granted "all the powers and authority necessary or convenient to carry out the purposes of this Act. . ." Louisiana Acts 1978, No. 305, Section 4; Louisiana Acts 1997, No. 1176, Section 4. Pursuant to this broad grant of power, in 1983 the NOEHA incorporated the New Orleans Public Facility Management, Inc. ("NOPFMI"), a quasi-public, non-profit corporation organized under the laws of Louisiana. *See* Exhibit "B," Louisiana Secretary of State Unofficial Detail Record; *and see* Food/Beverage Concession Contract for the New Orleans Convention Center, attached to Plaintiff's First Amended Complaint as Exhibit "2". The NOPFMI operates the New Orleans Convention Center, and is the party to the December 13, 1983 Food/Beverage Concession Contract for the New Orleans Convention Center, with the Joint Venture (Exquisito and ARAMARK). *See* Exhibit "C," printout of website of Morial Convention Center ("www.mccno.com"). Most contracts entered into by the NOEHA with respect to the furnishing or distribution of services "shall be entered into in accordance with the provisions of [La.] R.S. 38:2211," the Louisiana Public Contracts Law, and are subject to the provisions of La. R.S. 38:2233.2, relating to procurement set-asides for minority businesses. Louisiana Acts 1987, No. 390, Section 4(D) and (M); La. R.S. 38:2233 2 (E)(3), *see also* Louisiana Acts 1987, No. 390, Section 24 (relating to set-aside programs). The NOPFMI, as a creation of the NOEHA, is also subject to the provisions of La. R.S. 38:2211 and La. R.S. 38:2233.2 with regard to contracts it enters for the

furnishing or distribution of services to the Convention Center.  Although the NOEHA and the

NOPFMI are subject to the zoning ordinances of the City of New Orleans, they are not subject to the

ordinances with respect to contract minority set-aside programs, because they are not an entity

created by or operating under the authority of the city. *See* Louisiana Acts 1997, No. 1176, Section

4; *and see, e.g.,* Code of City of New Orleans, Louisiana, Sec. 70-416 (ordinance applicable to

contracts to which the city is a party).

Plaintiffs seek to join the New Orleans Convention Center[8] (the "Convention Center") as a

defendant.  Plaintiffs' proposed Second Amended Complaint alleges that the Convention Center is

a quasi-political subdivision of the State of Louisiana. Second Amended Complaint, ¶ I.  Thus, the

joinder of the Convention Center as a defendant would destroy this Court's diversity subject matter

jurisdiction, because Plaintiffs are also citizens of Louisiana.  However, this Court need not, and

should not, permit the Convention Center to be joined.  Plaintiffs have not stated whether they wish

to add the Convention Center under Rule 19 ("Joinder of persons needed for just adjudication") or

under Rule 20 ("Permissive joinder of parties").  However, under either standard, this Court should

exercise its discretion and not permit joinder of the Convention Center.

## 1.     Joinder under 28 U.S.C. §1447(e).

In requesting leave to amend, Plaintiffs rely on the liberal policy of Federal Rule of Civil

Procedure 15(a) that leave to amend pleadings "shall be freely given when justice so requires."

Plaintiffs' Memorandum in Support, p. 3.  Nevertheless, the present issue of whether the joinder of

---

[8]Re-named the "Ernest N. Morial Convention Center-New Orleans" by Louisiana Acts 1992, No. 43.

an additional defendant should be allowed is not controlled by Rule 15, but rather is controlled by 28

U.S.C. §1447(e).  "[T]he right to freely amend set forth in Rule 15 of the Federal Rules of Civil

Procedure does not apply where a party seeks to add a non-diverse party in a removed case." *Sharp*

*v. Kmart Corp.*, 991 F.Supp. 519, 521 (M.D. La. 1998).  Rather, 28 U.S.C. §1447(e) provides:

> If after removal the plaintiff seeks to join additional defendants whose
> joinder would destroy subject matter jurisdiction, the court may deny
> joinder, or permit joinder and remand the action to the State court.

The Fifth Circuit has recognized that a "district court, when faced with an amended pleading naming

a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than

an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

### 2. The New Orleans Convention Center Is Not a Necessary or Indispensable Party under Rule 19.

Nevertheless, the discretionary factors indicated under 28 U.S.C. §1447(e) and under the

dictates of *Hensgens* are applied only where the amendment seeks to add a "nondiverse

nonindespensable party." *Hensgens*, 833 F.2d at 1182.  Thus, before a court may exercise its

discretion under 28 U.S.C. §1447(e), it must determine that the party sought to be joined is not an

indispensable party, under Federal Rule of Civil Procedure Rule 19(b). In order to determine whether

a party is indispensable under Rule 19(b), a court must first determine whether the party sought to

be added is necessary for just adjudication under Rule 19(a).  *Teacher Retirement Sys. of Texas v.

Reilly Mortgage Group, Inc.*, 154 F.R.D. 156, 159 (W.D. Tex. 1994), *citing Pulitzer-Polster v.

Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).  A party is necessary under Rule 19(a) if:

> (1) in the person's absence complete relief cannot be accorded among
> those already parties, or (2) the person claiming an interest relating to

the subject of the action is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

The allegations in the proposed Second Amended Complaint against the Convention Center are that the "New Orleans Convention Center had a legal obligation to question the new agreement or the very least to verify the allegations regarding the termination of the contract and whether the contract should have been let for public bid again," and Plaintiffs assert a claim for compensation "[a]s a direct and proximate result of . . . the New Orleans Convention Center honoring the new agreement." Second Amended Complaint, ¶¶ IX, XII.[9] Plaintiffs' claims against the Convention Center are not well founded, and will not affect the availability of complete relief as between ARAMARK and Plaintiffs. First, Plaintiffs do not have a claim against the Convention Center, because the named party to the contract was the New Orleans Public Facility Management, Inc , as Plaintiffs aver in the First Amended Complaint, ¶VII, and in the proposed Second Amended Complaint, ¶VI.[10]

Second, Plaintiffs' claims arise from the alleged breach of the Joint Venture/Partnership Agreement  Plaintiffs' damages claims are based on the profits Exquisito allegedly could have received pursuant to the Joint Venture/Partnership Agreement.  The parties to the Joint

---

[9]Second Amended Complaint, ¶ IX is actually the eleventh paragraph, and ¶ XII is actually the fourteenth paragraph.

[10]Second Amended Complaint, ¶ VI is actually the eighth paragraph.

Venture/Partnership Agreement were ARAMARK and Exquisito.  Thus, complete relief may be afforded as between Exquisito and ARAMARK.  Plaintiffs' description of the damages claimed did not change with the proposed addition of the Convention Center as a party, therefore there is no independent claim for damages asserted against the Convention Center.  The only contract to which NOPFMI was a party was the December 13, 1983 Food/Beverage Concession Contract for the Convention Center which was formed with the Joint Venture, not the individual parties to the Joint Venture.  There was no independent obligation contractual or otherwise on the part of NOPFMI to any one party of the Joint Venture.  Plaintiffs must recognize this as they have not asserted a breach of contract action against NOPFMI.  Any award of lost profits, lost business opportunity and bad faith dealing must be calculated based on the percentage Exquisito would have been entitled to receive under the Joint Venture/Partnership Agreement.  Thus, because Plaintiffs claim damages for breach of the Joint Venture/Partnership Agreement, neither NOPFMI nor the Convention Center are a necessary party to any dispute arising between the participants of the Joint Venture.  *See Nottingham v. Gen. American Communications Corp.*, 811 F 2d 873, 880 (5th Cir.), *cert. denied*, 484 U S. 854, 108 S.Ct. 158 (1987) (Rule 19 does not require joinder of joint tortfeasors, principal and agent, or those against whom a contribution claim may be alleged).

Third, there is no threat of inconsistent judgments or of parallel state actions.  Plaintiffs do not have a claim upon which relief may be granted under state law for violation of the public bids laws by the Convention Center (or NOPFMI) because Plaintiffs' claims arise from an alleged failure to comply with the public bid laws, and in order to institute an action for any alleged violation of same, a complainant must meet certain procedural prerequisites.  Plaintiffs have failed to do this.

287589.1                                    15

Louisiana Revised Statute 38:2220.2 authorizes a civil action against a public entity "to seek a declaration" that a violation by of the provisions of R.S. 38:2212, *et seq.*, has occurred. The procedure for instituting such an action are set forth in La. R.S. 38:2220.3, which requires that "[p]rior to initiation of the civil action, the complainant shall inform the attorney general of the alleged violation" and send the information to the attorney general "within 15 days from the date of discovery of the alleged violation by the complainant." La. R.S. 38:2220.3(A). The complainant has a right to initiate a declaratory action against a public entity for an alleged violation of the public bid laws only "[i]f the attorney general does not initiate a civil action within thirty days from the date of receipt of information concerning the alleged violation." La. R.S. 38:2220.3(C). Plaintiffs have not complied with these procedures, and therefore have no right to initiate any civil action against the Convention Center. Furthermore, under Louisiana jurisprudence, in order to assert a claim for damages against a public entity for failure to comply with the public bid law, the complainant/unsuccessful bidder must have previously filed a timely petition for injunction under La R.S. 38:2220, or must show why a timely suit for injunctive relief was impossible. *B.F. Carvin Constr. Co., Inc. v. Jefferson Parish Council*, 98-1189 (La. App. 5th Cir 5/19/99), 735 So.2d 859, 862, *writ denied*, 99-1787 (La. 10/8/99), 750 So.2d 969; *Webb Constr., Inc. v. City of Shreveport*, 27,761 (La. App. 2nd Cir. 12/6/95), 665 So 2d 653. Plaintiffs have not done this, and therefore have no right to assert a claim for damages against the Convention Center or NOPFMI for alleged violation of the public bid law.

ARAMARK contends that the applicable law is the Louisiana Public Contract Law, La. R.S. 38:2211 *et seq.*, because the New Orleans Exhibition Hall Authority is a political subdivision of the state and is subject to La. R.S. 38:2211 *et seq. See* La. Acts 1978, No. 305; La. R.S.

38.2233.2(E)(3).  However, even assuming the city ordinances apply, Plaintiffs similarly have not

exhausted their administrative remedies in order to file a civil action as required under the Ordinances

of the City of New Orleans.  *See* Code of Ordinances of City of New Orleans, Louisiana (1995, as

updated through 2001 supplement), Sec. 46-39(e) and (g) (requiring administrative hearing as

prerequisite to filing a civil action in court);Code of Ordinances of City of New Orleans, Louisiana

(1995, as updated through 2001 supplement) Sec. 70-468 and Sec. 70-510 (requiring "any person

or entity aggrieved with respect to a contract award" to file "a written appeal with the chief

administrative officer within 72 hours after the award.").[11]  Thus, whether the state Public Contract

Law or the City of New Orleans Ordinances control an action by Plaintiffs against the Convention

Center, Plaintiffs have no right to commence a civil action against the Convention Center, whether

for damages or for declaratory judgment, because Plaintiffs have failed to comply with the applicable

procedures.  *See Lillie v. Wyeth-Ayerst Labs.*, 1994 WL 532091, at *1 (E.D. La., 9/26/94, No. 94-

1744) ("The fact that plaintiffs would like to have added the non-diverse defendant already, but are

barred for procedural reasons from doing so, is simply not enough to justify remand ")

     Thus, it is clear that the Convention Center (or the NOPFMI) is not a necessary party under

Rule 19(a), because complete relief may be granted in the absence of the Convention Center (or

NOPFMI), and there is no threat of inconsistent judgments or parallel state litigation involving the

Convention Center.  Additionally, the record is devoid of any facts indicating that the interests of the

Convention Center would be impaired or impeded as a practical matter by the failure to join it as a

---

    [11]Copies of the relevant portions of the Code of Ordinances of the City of New Orleans are
attached hereto as Exhibit "D."

party. *See Cajun Elec. Power Coop. v. Gulf States Utils. Co., Inc.*, 132 F.R.D. 42, 46 (M.D. La.

1990). Because the Convention Center is not a necessary party under Rule 19(a), it also is not an

indispensable party under Rule 19(b). Accordingly, joinder of the Convention Center should not be

permitted under any circumstances.

### 3. This Court Should Deny Plaintiffs' Motion to Amend the Complaint to Add the New Orleans Convention Center Because the Balance of the Equities Do Not Permit It.

ARAMARK has demonstrated that the Convention Center is not an indispensable party and

that it need not be joined. ARAMARK also submits that the Convention Center should not be joined

under the discretionary rules for joinder under 28 U.S C. §1447(e). As earlier stated, a district court,

when confronted with an amendment to add a nondiverse, nonindispensable party, "should use its

discretion in deciding whether to allow that party to be added." *Hensgens*, 833 F.2d at 1182. As the

Fifth Circuit went on to note:

> Because the court's decision will determine the continuance of its
> jurisdiction, *the addition of a party must not be permitted without*
> *consideration of the original defendant's interest in the choice of*
> *forum* The district court, when faced with an amended pleading
> naming a new nondiverse defendant in a removed case, should
> scrutinize that amendment more closely than an ordinary amendment.

*Id.* (emphasis added). Thus, the district court must "consider a number of factors to balance the

defendant's interest in maintaining the federal forum with the competing interests of not having

parallel lawsuits," including, *e.g.*, (1) the extent to which the purpose of the amendment is to defeat

federal jurisdiction; (2) whether plaintiff has been dilatory in seeking the amendment; (3) whether

plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing

on the equities of the situation.[12]

Looking to the first factor, the purpose of the amendment is clearly to destroy diversity, and examining the second factor, Plaintiffs have been dilatory in seeking amendment. Plaintiffs have known about the alleged role of the Convention Center (or NOPFMI) since the Original Petition was filed in October 1999. In the Original Petition, Plaintiff alleged a set-aside program existed with respect to the contract with the Convention Center, and further alleged that ARAMARK continued to provide services to the Convention Center after 1989. Original Petition, ¶¶ 3, 6. Furthermore, six months after Plaintiffs retained legal counsel in this case, Plaintiffs filed a First Amended Complaint, which also indicates that Plaintiffs were well aware of the alleged set-aside programs for contracts with the City of New Orleans and that Plaintiffs were aware of the continued service contract between ARAMARK and NOPFMI. First Amended Complaint, ¶¶ V, VIII, XIII. Thus, Plaintiffs have known about the role of the Convention Center and/or NOPFMI since the beginning of this suit, yet Plaintiffs did not seek to add it as a party until a year and a half after the suit was removed to federal court, and not until more eight months after Plaintiffs retained legal counsel. *Alcantara v. Prudential Life Ins. Co. of America*, 75 F.Supp.2d 563, 565 (E.D. Tex. 1999) (finding purpose of proposed amended complaint was to destroy diversity where party seeking amendment knew of the nondiverse party's role from the beginning of the suit). Therefore, under the second *Hensgens* factor, Plaintiffs have been dilatory in seeking the amendment.

---

[12]Although *Hensgens* was decided prior to the enactment of 28 U.S.C. §1447(e), the *Hensgens* factors are still good law. *Alcantara v. Prudential Life Ins. Co. of America*, 75 F.Supp.2d 563, 565 (E.D. Tex. 1999); *Sharp*, 991 F.Supp. at 526-527.

The district courts of the Fifth Circuit have generally viewed "any later attempt to add the nondiverse party as a defendant as nothing more than an attempt to destroy diversity," when the plaintiff had knowledge of the nondiverse defendant's activities at the time suit was originally filed. *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F.Supp. 433, 435 (E.D. Tex. 1995); *O'Connor v. Automobile Ins. Co.*, 846 F.Supp. 39, 41 (E.D. Tex. 1994) (refusing to allow amendment of a nondiverse insurance agency where the agency was mentioned in the original petition filed in state court); *Connoisseur Doors, Inc. v. Haney Corp.*, 1996 WL 156557 (W.D. Tex., 4/1/96, No. SA 96-146) (noting that plaintiff had knowledge of nondiverse defendant when suit was commenced, and did not include it in suit). Therefore, because Plaintiffs' Original Petition recognized the role that the NOPFMI and/or the Convention Center had in the continuation of the service contract with ARAMARK after 1989, and alleged an applicable minority set-aside program, as did the First Amended Complaint, it is clear that Plaintiffs' purpose in seeking to add the Convention Center as a defendant at this late date is to defeat jurisdiction, and that Plaintiffs have been dilatory in seeking such amendment.

Under the third *Hensgens* factor, Plaintiffs will not be significantly injured if the amendment is not allowed. As previously explained, Plaintiffs have no right to proceed in a civil action against the Convention Center/NOPFMI. Plaintiffs have not exhausted their administrative remedies under the applicable ordinances of the City of New Orleans and/or are barred by procedural reasons from suing the Convention Center for damages for non-compliance with the public bids laws. *See Wynn v. State Auto. Mut. Ins. Co.*, 856 Supp. 330, 338 (E.D. Mich. 1994) (refusing to allow post-removal amendment of nondiverse party where the amendment would be futile because plaintiff could not state

a claim for relief against the party sought to be joined); *see Lillie*, 1994 WL 532091, at *1 ("The fact that plaintiffs would like to have added the non-diverse defendant already, but are barred for procedural reasons from doing so, is simply not enough to justify remand."). Thus, the third *Hensgens* factor also weighs against the joinder of the Convention Center.

The fourth *Hensgens* factor, which considers any other factors bearing on the equities of the situation, also militates against the joinder of the Convention Center as a defendant  Any action against the Convention Center (or NOPFMI) based on violation of the public bid laws would involve the application of legal standards wholly inapplicable to the breach of contract claim against ARAMARK. *See Denton v. Critikon, Inc.*, 137 F.R.D. 236, 238 (M.D. La. 1991).  Furthermore, as previously noted, Plaintiffs' claim for damages is limited to the loss of profits and business opportunities arising out of the termination of the Joint Venture/Partnership Agreement with ARAMARK, and ARAMARK will be more than able to satisfy any money judgment that Plaintiffs may obtain in this action.  Thus, Plaintiffs will suffer no prejudice from the denial of leave to join the Convention Center (or NOPFMI). *See Alcantara*, 75 F.Supp.2d at 566 (noting that denial of joinder would not deprive movants of recovery).

The purpose of the *Hensgens* factors is "to balance the defendant's interest in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Hensgens*, 833 F.2d 1182.  Where it is unlikely that there will be a parallel state action, ARAMARK's interest in maintaining the federal forum should prevail.  Thus, under the discretionary standard of 28 U.S.C. §1447(e), the equities do not weigh in favor of the joinder of the Orleans Convention Center, and the Motion for Leave to Add the Convention Center should be denied.

287589 1                                    21

## III.    CONCLUSION

With respect to Plaintiffs' challenge to this Court's diversity subject matter jurisdiction, ARAMARK respectfully requests this Court to find that ARAMARK has presented evidence that it is more likely than not that the amount in controversy exceeds the jurisdictional amount, and therefore should not dismiss the case for lack of subject matter jurisdiction. With respect to Plaintiffs' Motion for Leave to amend to add an additional defendant, the New Orleans Convention Center, ARAMARK respectfully requests this Court to find that the New Orleans Convention Center is neither a necessary party nor an indispensable party under Rule 19, and further to find, based on the under the discretionary standard of 28 U.S.C. §1447(e), for the equities do not weigh in favor of the joinder of the New Orleans Convention Center. Accordingly, the Motion Leave to Add the New Orleans Convention Center should be denied

Respectfully submitted,

**E. FREDRICK PREIS, JR. (10704)**
**CRAIG L. CAESAR, T.A. (19235)**
McGLINCHEY STAFFORD
A Professional Limited Liability Company
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR ARAMARK SPORTS**
**AND ENTERTAINMENT SERVICES, INC.**
**AND JOSEPH NEUBAUER**

287589.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed this 24th day of September, 2001.

Craig L. Caesar