FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 FEB 19  PM 4: 23

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC.** | * | |
| **AND WILLIAM DICKERSON** | | **CIVIL ACTION** |
|     **Plaintiffs** | * | **NO. 00-0049** |
| | | |
|        **VERSUS** | * | |
| | | **SECTION "S"** |
| **ARAMARK SPORTS AND** | * | |
| **ENTERTAINMENT SERVICES, INC.** | | |
| **AND JOSEPH NEUBAUER,** | * | |
|     **Defendants** | | **MAG. DIV. 5** |

\*     \*     \*     \*     \*     \*     \*     \*

## MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come defendants, ARAMARK
Sports and Entertainment Services, Inc and Joseph Neubauer (collectively "defendants") and
pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully move this Court for the
entry of judgment in their favor and against plaintiffs Exquisito Services, Inc. and William
Dickerson (collectively "Plaintiffs"), dismissing the suit with prejudice, upon finding as a matter
of law, that Plaintiffs' claims arising out of an alleged breach of contract are time barred under
Louisiana Civil Code article 3499.

Alternatively, in the event this Court grants defendants' Motion to Strike Plaintiffs'
Expert Witness, also filed this day, because Plaintiffs did not identify an expert witness or submit
an expert report by the October 27, 2001, deadline, defendants move that summary judgment be

Process
X Dktd
CtRmDep
Doc.No.

entered herein against Plaintiffs, dismissing the suit with prejudice because, as a matter of law, without an expert witness, Plaintiffs will not be able to prove any certain quantum of damages for lost future profits and loss of business opportunity, a requisite element of a contractual claim.

Finally, defendants move that summary judgment be entered herein dismissing all claims against Neubauer, with prejudice, upon finding that Plaintiffs have no evidence of Neubauer's involvement in this contract dispute in any manner, and further upon finding that no claim for breach of contract against Neubauer personally may lie where he is not a party to any relevant contract. Accordingly, for the reasons more fully set forth in the accompanying Memorandum in Support, defendants respectfully requests that the Court grant this Motion.

Respectfully submitted,

**E. FREDRICK PREIS, JR. (10704)**
**CRAIG L. CAESAR, T.A. (19235)**
McGLINCHEY STAFFORD
Professional Limited Liability Company
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR ARAMARK SPORTS**
**AND ENTERTAINMENT SERVICES, INC.**
**AND JOSEPH NEUBAUER**

316210.1

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed this 19th day of February, 2002.

Craig L. Caesar

316210 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC.** | * | |
| **AND WILLIAM DICKERSON** | | **CIVIL ACTION** |
| **Plaintiffs** | * | **NO. 00-0049** |
| | * | |
| **VERSUS** | * | |
| | * | **SECTION "S"** |
| **ARAMARK SPORTS AND** | * | |
| **ENTERTAINMENT SERVICES, INC.** | | |
| **AND JOSEPH NEUBAUER,** | * | |
| **Defendants** | | **MAG. DIV. 5** |

\*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes defendants, ARAMARK

Sports and Entertainment Services, Inc. ("ARAMARK") and Joseph Neubauer ("Neubauer"),

who, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully files this

Memorandum in Support of Defendants' Motion for Summary Judgment and moves that

summary judgment be entered herein against plaintiffs, Exquisito Services, Inc. ("Exquisito")

and William Dickerson ("Dickerson") (collectively, "Plaintiffs"), in the above-captioned matter,

dismissing the suit with prejudice, upon finding as a matter of law, Plaintiffs' claims arising out

of an alleged breach of contract are time barred under Louisiana Civil Code article 3499.

Alternatively, in the event this Court grants defendants' Motion to Strike Plaintiffs' Expert

Witness[1] because Plaintiffs did not identify an expert witness or submit an expert report by the October 27, 2001, deadline, defendants move that summary judgment be entered herein against Plaintiffs, dismissing the suit with prejudice because, as a matter of law, without an expert witness, Plaintiffs will not be able to prove any certain quantum of damages for lost future profits and loss of business opportunity, a requisite element of a contractual claim. Finally, defendants move that summary judgment be entered herein dismissing all claims against Neubauer, with prejudice, upon finding that Plaintiffs have no evidence of Neubauer's involvement in this contract dispute in any manner, and further upon finding that no claim for breach of contract against Neubauer personally may lie where he is not a party to any relevant contract. Therefore, Plaintiffs will not be able to prove any claim asserted against Neubauer.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a Joint Venture/Partnership Agreement (the "Agreement" or the "Joint Venture Agreement"), which was entered into on December 13, 1983, between ARA Leisure Services, Inc. and Exquisito Services, Inc. ("Exquisito"), and which created a joint venture (the "Joint Venture") between the two parties to the Agreement. Plaintiff Dickerson was the principal of Exquisito, and defendant ARAMARK was formerly known as ARA Leisure Services, Inc. The Joint Venture Agreement had an initial term of ten years. *See* Exhibit "A", Joint Venture Agreement, Paragraph II. A., p.3, *and see* Exhibit "B," Food/Beverage Concession Contract for the New Orleans Convention Center, Paragraph 1, p.1.

---

[1]    Defendants have this day filed a Motion to Strike Plaintiffs' Expert Witness and Other Facts Witnesses and Exhibits.

Dickerson signed the Agreement on behalf of Exquisito (attested to by C.H Pecot), and Robert Palumbo signed on behalf of ARAMARK (attested to by Michael Kelly) *See* Exhibit "A", Joint Venture Agreement, p 24. The Joint Venture then contracted with the New Orleans Public Facility Management, Inc. ("NOPFMI") to provide services to the New Orleans Convention Center, pursuant to a Food/Beverage Concession Contract for the New Orleans Convention Center (the "Concession Contract"), executed the same day as the Agreement.

Some time prior to March 14, 1989, ARAMARK received information that Exquisito had assigned its interest in the Agreement to another entity, Exqusite Supreme Caterers, Inc , who was not a party to the Agreement, without ARAMARK's consent. *See* Exhibit "C", Letter dated March 14, 1989, to Carlton H. Pecot. Pursuant to the terms of the Agreement, any assignment of Exquisito's interest in the Joint Venture, without ARAMARK's prior written approval, was grounds for termination of the Joint Venture Agreement. *See* Exhibit "A", Agreement, Paragraph VII. F., pp. 22-23.[2] Also, pursuant to the terms of the Agreement, the Joint Venture could terminate a defaulting partner's interest in the Agreement, upon giving the defaulting partner written notice specifying the default, and granting 60 days to cure the breach *See* Exhibit "A," Agreement, Paragraph VI. B and C, pp. 20-21. According to the terms of the Agreement, all notices to Exquisito relating to the Agreement were to be sent by certified mail to

---

[2]    Joint Venture Agreement, Paragraph VII. F., pp. 22-23 provides: "No party to this Agreement may assign, pledge, transfer or otherwise dispose of its interest in the Joint Venture or any assets thereof in the Concession Contract without the written approval of the other partner. Neither party shall sell, transfer, assign or otherwise dispose of any of its shares without offering same to the other party upon the same terms upon thirty (30) days notice, and neither party shall otherwise give, transfer, or despose [sic] of its shares or permit such disposition without the other party's consent."

"Exquisito Services, Inc., Attn: President, 1620 Melpomene St., New Orleans, LA 70130." *See* Exhibit "A," Agreement, Paragraph VII. E., p. 22.

Pursuant to the terms of the Agreement, ARAMARK sent a letter dated March 14, 1989, by certified mail to Exquisito's address listed in the Agreement. *See* Exhibit "C", Letter dated March 14, 1989, to Carlton H. Pecot. The letter of March 14, 1989, notified Exquisito that any assignment of its interest in the Agreement was in breach of the terms of the Agreement, and informed Exquisito that it had 60 days to cure this breach, or else the Joint Venture would terminate the interests of Exquisito as a partner in the Joint Venture. *See* Exhibit "C" Letter dated March 14, 1989, to Carlton H. Pecot. This certified-mail letter, addressed to "Exquisito Services, Inc., Attention: President," and to Exquisito's address listed in the Joint Venture Agreement, was returned to ARAMARK by the postal service because Exquisito's mail-forwarding address had expired. *See* Exhibit "D" Letter to Stephen Chouest, dated May 23, 1989. The Joint Venture Agreement required no other action on the part of ARAMARK in order for the 60-day cure period to start running. Because notification of the breach based on the assignment of Exquisito's interest in the Agreement to Exquisite Supreme Caterers, Inc conformed to the terms of the Agreement, by sending a notification letter by certified mail to the address listed in that contract, the cure period began running at latest by April 1, 1989 Thus, the 60 day cure period provided for by the terms of the Agreement had completed running at the latest by June 1, 1989

Nevertheless, in addition to sending the notification letter by certified mail to the address listed in the Agreement, ARAMARK also sent a copy of the March 14, 1989, notification letter, by certified mail, to Mr. Carlton H. Pecot of Exquisite Supreme Caterers and to Mr William

Dickerson at Granite Financial Services, and by facsimile to Mr. William Dickerson at Granite Financial Services. *See* Exhibit "C," Letter to Carlton H. Pecot, dated March 14, 1989, *and* Exhibit "D," Letter to Stephen Chouest, dated May 23, 1989, *and* Exhibit "E," Letter to William Dickerson, dated March 14, 1989. Thus, ARAMARK met and exceeded its obligations under the Agreement in order to notify Exquisito of its breach of the terms of the Agreement and to commence the running of the cure period, and to give Exquisito the opportunity to respond and cure the breach.

Furthermore, Dickerson had actual knowledge (1) that Exquisito's interest in the Joint Venture Agreement was terminated in the Summer of 1989, and (2) that Exquisito's participation was similarly terminated in the Concession Contract with NOPFMI. Dickerson's actual knowledge of these events is confirmed in correspondence dated July, 1989. *See* Exhibit "F," letter dated July 5, 1989, from Stephen Chouest (counsel for either NOPFMI or the New Orleans Convention Center) to Mr. Dan Saunders, president of NOPFMI. In that correspondence, Mr. Chouest addresses the fact that in response to a letter sent by Chouest, Dickerson telephoned Chouest on July 5, 1989, and discussed Exquisito's involvement in the NOPFMI Food/Beverage Concession Contract. *See* Exhibit "F". Later that same month, Mr. Dickerson again telephoned Stephen Chouest's office, and requested that Chouest meet with Dickerson's attorney, Mr. William Aaron, "in order to meet and discuss the status of the Joint Venture and related issues." *See* Exhibit "G," Letter to Dan Saunders, dated July 19, 1989.

Based on these correspondences, not only is it clear that ARAMARK provided notification of breach and of the 60-day cure period, in strict accordance with the terms of the Agreement, but also, *it is clear that Dickerson and Exquisito had actual knowledge that*

5

*ARAMARK was terminating Exquisito's interest in the Agreement*, based on Exquisito's breach of the terms of the Agreement – namely an unauthorized assignment of Exquisito's interest in the Agreement. Thus, even if the 60-day cure period is calculated as running from July 5, 1989, the date that Dickerson clearly had actual knowledge of the termination of Exquisito's interest in the Joint Venture, Exquisito's interest in the Agreement was effectively terminated, at latest by September, 1989.

After the principals of Exquisito received the March 14, 1989, notice of its breach of the Agreement, and after the Joint Venture terminated Exquisito's interest in the Joint Venture in June, 1989, on October 13, 1989, NOPFMI assigned the entire interest in the Concession Contract to ARAMARK.

Despite the actual knowledge of Exquisito and Dickerson regarding the termination of Exquisito's interest in the Joint Venture (at earliest by late March, 1989, and at latest by July 5, 1989), and despite the fact that Dickerson had requested a meeting between NOPFMI and Dickerson's lawyer, Mr. William Aaron, in July, 1989, Dickerson did not file the present suit against ARAMARK and Neubauer based on alleged beach of the Joint Venture Agreement until October 13, 1999 – over ten years after Exquisito's interest in the Agreement terminated.

Plaintiffs, originally pro se, filed this suit in the Civil District Court for the Parish of Orleans, State of Louisiana. Plaintiffs' state court petition ("Original Petition") asserted a claim for bad faith breach of contract against the defendants, ARAMARK and Neubauer. Plaintiffs alleged that the defendants, unilaterally and without legal cause, canceled the Joint Venture Agreement. Original Petition, Paragraphs 4, 5. Plaintiffs further alleged that the defendants continued to provide food services "pursuant to the original contract with the City of

New Orleans Convention Center," and therefore, that Plaintiffs had been deprived of "their share of the profits as a result of the breach of the joint venture agreement" from 1989 to the present. Original Petition, Paragraphs 5, 6  The Original Petition was never properly served on either defendant, as prescribed by state law or by Federal Rule of Civil Procedure 4.[3]

An Order of Dismissal, on December 6, 2000, was entered, for failure of Plaintiffs, pro se, to effect service of process on the defendants, and Plaintiffs' First Motion for Reconsideration was denied.  Plaintiffs' counsel filed a Motion to Enroll in January, 2001  On February 2, 2001, Plaintiffs' newly enrolled counsel filed a second Motion for Reconsideration of the December 6, 2000, dismissal of the case, which Motion was granted by this Court on May 1, 2001

Thereafter, on June 22, 2001, counsel for Plaintiffs filed a First Amended Complaint. The First Amended Complaint did not incorporate the allegations of the Original Petition and did not name any additional defendants.  Although it was apparently intended to supplement the allegations contained in the Original Petition, the First Amended Complaint did not add any new claims or defenses.  The First Amended Complaint, like the original Petition, asserted a cause of action for bad faith breach of the Joint Venture Agreement.  First Amended Complaint, Paragraphs IX, X, XI.  The First Amended Complaint further specified that damages should be awarded based on lost anticipated profits, on lost business opportunity and on bad faith dealing, and attached as exhibits two contracts: (1) the Joint Venture/Partnership Agreement between

---

[3]     Defendant Neubauer did receive a copy of the Petition some two months after suit was filed, on December 13, 1999; however, the form of transmittal to him did not constitute proper service on either defendant.  Thereafter, on January 6, 2000, defendants timely removed the case to this Court pursuant to 28 U.S C  § 1441

ARAMARK and Plaintiffs, dated December 13, 1983; and (2) the Food/Beverage Concession Contract for the New Orleans Convention Center, also dated December 13, 1983. First Amended Complaint, Paragraphs XII, XIII.

Defendants, ARAMARK and Neubauer, answered the First Amended Complaint, which was the first complaint served on either defendant, denied the allegations, and asserted as an affirmative defense, that the Plaintiffs' claims were barred by prescription. Answer of Defendants to First Amended Complaint, Second Affirmative Defense. In addition, defendant Neubauer also asserted the affirmative defense of lack of personal jurisdiction. Plaintiffs thereafter filed a Motion for Leave to file a second amended complaint, which motion was denied on October 11, 2001. Although Plaintiffs' deadline for submitting expert reports was October 27, 2001, no expert report was submitted at that time, and no request for extension of the Plaintiffs' expert witness deadline was filed.[4] Nevertheless, Plaintiffs named an expert in their Witness List, dated January 4, 2002.[5]

On January 4 and 9, 2002, the parties had a settlement conference with Magistrate Judge Chasez. Trial is presently set for May, 2002.

## II.    LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, . . . show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

---

[4]    Under the Original Scheduling Order, dated July 26, 2001, Plaintiffs' expert deadline was October 27, 2001 (90 days prior to Final Pretrial Conference originally set for January 25, 2002).

[5]    *See* Motion to Strike Plaintiffs' Expert Witness and Other Fact Witnesses and Exhibits

56(c). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party '" *LeJeune v. Shell Oil Co.*, 950 F 2d 267, 268 (5th Cir. 1992), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S Ct 2505, 2510 (1986). The substantive law determines which facts are material. *Id.*

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U S 317, 323, 106 S.Ct. 2548, 2552 (1986). The moving party need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2554; *Fontenot v. Upjohn Co.*, 780 F 2d 1190, 1195 (5th Cir. 1986)

If the moving party carries his initial burden, the nonmoving party must then demonstrate the existence of a genuine issue of material fact. This showing requires more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 584-588, 106 S.Ct. 1348 (1986). Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial *Id* "Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir 1993)

In this case, summary judgment is an appropriate procedural vehicle to address whether Plaintiffs' claims are time barred, and whether Plaintiffs will be able to prove any quantum of

9

damages, and whether Plaintiffs have stated or will be able to support any claim for breach of contract against defendant Neubauer. A determination that a claim is time barred is appropriate for summary judgment. *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292 (5th Cir 1995) (affirming summary judgment dismissing plaintiff's diversity action based on Louisiana tort law on the ground that plaintiff's claim had prescribed), *cert. denied*, 515 U.S. 1160, 115 S.Ct. 2614 (1995); *see Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578, 584 (5th Cir. 1974) (defense of prescription of contractual claim appropriate for summary judgment where case depends on the construction of a contract). Furthermore, a determination that, as a matter of law, Plaintiffs will not be able to prove an essential element of their claim, in this case damages and, as to Neubauer, lack of proof of any involvement with respect to the contract or the present dispute, is also sufficient to justify entry of summary judgment. *Celotex Corp.*, 477 U.S at. 322-325, 106 S.Ct. at 2552-2554.

**B.      Plaintiffs' Complaint is Time Barred**

Plaintiffs' cause of action for breach of contract arising out of the termination of the Joint Venture Agreement is time barred. In a diversity action based on a Louisiana cause of action, the Louisiana prescriptive period is applicable.[6] *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir. 1983). The liberative prescriptive period applicable to Plaintiffs' state claim for breach of contract is ten (10) years *from the date that the contract was allegedly breached.* La Civ Code art. 3499; *Abdul-Alim Amin*, 706 F.2d at 640; *Loewer v. Texas Gas Transmission Co.*, 615 F.Supp. 1, 2 (W.D La 1984).

---

[6]      The Joint Venture Agreement states that its interpretation "shall be in accordance with the laws of the State of Louisiana." *See* Exhibit "A," Agreement, Paragraph VII J , p 24.

"Legal agreements have the effect of law as between the parties, and the courts are bound to give effect to the contracts according to the intent of the parties." *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578, 584 (5th Cir 1974). Thus, the terms of the Joint Venture Agreement entered into by Plaintiffs and ARAMARK controls the Joint Venture relationship and forms the law between the parties. La. Civ. Code. art. 1983*; Louisiana Nat'l Leasing Corp. v. Family Pools, Inc.*, 345 So.2d 480, 482 (La 1977), *United States v. 926.787 Acres of Land, More or Less, In Iberia Parish, State of La.*, 227 F.Supp. 361, 364 (E.D. La. 1964) (holding that under Louisiana law, "a contract, legally entered into has the effect of law upon the parties to it, and while the Court is bound to give legal effect to it according to the true intent of the parties, still that intent must be determined by the words of the contract").

In an apparent attempt to avoid prescription, Plaintiffs appear to contend that ARAMARK's alleged breach of the Agreement occurred in October, 1989, upon NOPFMI's assignment of the Concession Contract to ARAMARK. Nevertheless, ARAMARK's March 14, 1989, notification letter to Exquisito of Exquisito's breach (based on an unauthorized assignment of Exquisito's interest in the Joint Venture) and of the commencement of the 60-day cure period, clearly explains that Exquisito's interest in the Joint Venture would be terminated in 60 days. This notification letter was sent to three addresses to Exquisito's address as listed in the Agreement, to Dickerson at a separate address, and to Carlton Pecot at a separate address. Although it appears that the March 14, 1989, letter sent to the address listed in the Agreement was returned because Exquisito had allowed its forwarding address to lapse, there is no indication that the copies of that letter sent to Pecot and Dickerson were not received. Therefore,

11

Plaintiffs were on notice that Exquisito's interest in the contract would be terminated effective, at latest, by June 1, 1989.

Additionally, the July, 1989, correspondence from Stephen Chouest to Dan Saunders, the president of NOPFMI, further confirms that Dickerson had full knowledge that Exquisito's interest in the Joint Venture had been terminated. Therefore, the date that prescription on Plaintiffs' alleged breach of contract claim began to run was, at latest, in July, 1989.

Plaintiffs did not file suit until October, 1999. Defendants respectfully submit that this Court should disregard Plaintiffs' attempt to avoid prescription by claiming that the date their contract claim arose was in October, 1989, at the time the assignment of the NOPFMI Concession Contract to ARAMARK. The October, 1989, date of the assignment of the NOPFMI Concession Contract from the Joint Venture to ARAMARK is irrelevant to the date of the termination of Exquisito's interest in the Joint Venture Agreement, and thus irrelevant in establishing that Plaintiffs' suit was timely filed. Plaintiffs' breach of contract claim is based on the Joint Venture's (acting through ARAMARK) termination of Exquisito's interest in the Agreement, which was accomplished by the March 14, 1989 notification letter which began the running of the 60 day cure period. The October, 1989, assignment of the NOPFMI Concession Contract to ARAMARK occurred months after the Joint Venture's March 14, 1989 notice of default, which if uncured (as it was) resulted in termination of Exquisito's interest in the Joint Venture, and months after it is clear that Dickerson had notice that Exquisito's interest was terminated. Plaintiffs had a full ten years to file suit on their alleged breach of contract claim. Nevertheless, Plaintiffs filed suit approximately ten years and five months after the date of the March 14, 1989, notification letter sent by ARAMARK, approximately ten years and three

12

months after the actual termination date of the Exquisito's interest in the Joint Venture Agreement (at latest, June 1, 1989), and ten years and two months after it is clear that Dickerson had notice that Exquisito's interest in the Agreement was terminated (July 5, 1989). Plaintiffs' attempt to avoid prescription, by tying the date of the alleged breach by ARAMARK of the Joint Venture Agreement to the date of NOPFMI's assignment of the Concession Contract to ARAMARK, should be disregarded by this Court.

Therefore, Plaintiffs' claims for breach of contract are prescribed, and defendants respectfully request that this Court dismiss with prejudice Plaintiffs' suit, because all of Plaintiffs' claims are time-barred.

### C.   Plaintiffs Will Be Unable To Prove An Essential Element of their Breach of Contract Claim

In the event that this Court grants defendants' Motion to Strike Plaintiffs' Expert Witness, Dr. Thompson, Plaintiffs will be unable to prove actual damages arising from the alleged breach of contract, and Plaintiffs' suit based on breach of contract should be dismissed, with prejudice.

Under Louisiana law, "[t]he party bringing suit has the burden of proving any damages suffered by it as a result of a breach of contract," and no recovery may be had until such proof is submitted. *L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc.*, 99-0354 (La. App. 1st Cir 6/23/00), 762 So.2d 1223, 1235, *writ denied*, 2000-2232 (La. 11/13/00), 775 So.2d 438, *Foreman v. Jordan*, 131 So.2d 796 (La. App. 3rd Cir. 1961) In a breach of contract action, the plaintiff is entitled to recover "the amount of loss he sustained and the profit from which he has been deprived." *J.B. Talley & Co., Inc. v. Vilaret Constr. Servs. Inc.*, 98-395 (La App 3rd Cir.

13

10/7/98), 722 So.2d 9, 10-11, *writ denied*, 99-0374 (La. 3/26/99), 739 So.2d 798.  The plaintiff in a breach of contract action must prove actual damages, and "[s]peculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits."  *J.B. Talley & Co.,* 722 So.2d at 11; *Nat Harrison Associates, Inc.,* 491 F.2d at 587.  "While the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes any award." *J.B. Talley & Co.,* 722 So.2d at 11.  At a minimum plaintiff's "evidence must furnish data for a reasonably accurate estimate of the amount of damages." *Nat Harrison Associates, Inc.,* 491 F.2d at 587

Plaintiffs' in their First Amended Complaint requested the following damages: (1) loss of anticipated profit; (2) loss of business opportunity; and (3) bad faith dealing.  Because "[s]peculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits," without expert testimony establishing lost future profits, Plaintiffs will not be able to prove any damages arising out of the alleged breach of contract.  *See, e.g., Mahayna, Inc. v. Poydras Center Associates,* 95-0932 (La App. 4th Cir. 12/14/95), 665 So.2d 166, 168 (refusing to award lost profits where supported only by mere estimates of loss).  Therefore, under Louisiana law, Plaintiffs will not be able to recover any damages based on the alleged breach of contract.

In the instant case, it is clear that Plaintiffs will not be able to bear their burden of proving actual damages based on the alleged breach of contract without the testimony of an expert witness, due to the inherently speculative nature of lost future profit awards and to the even more elusive nature of lost business opportunity awards.  As more fully explained in defendants' Motion to Strike Plaintiffs' Expert Witness, Plaintiffs named, but did not truly identify, an expert witness in Plaintiffs' Witness List submitted January 4, 2002.  Nevertheless,

no expert witness was timely identified by the October 27, 2001, deadline as required by the Court's July 26, 2001, Scheduling Order, and no written expert report was timely submitted by the October 27, 2001, deadline. Furthermore, to this day Plaintiffs have not submitted a written expert report. Without an expert witness, Plaintiffs will not be able to establish actual damages for lost future profits or lost business opportunity, and any figure submitted by Plaintiffs as to these damages would be merely speculative and conjectural. Therefore, defendants, ARAMARK and Neubauer, respectfully request this Court to dismiss Plaintiffs' claim, with prejudice, because without an expert witness, Plaintiffs will not be able to carry their burden of proving damages, a requisite element of a breach of contract claim.

**D.    Plaintiffs Have Not Alleged, and Will Be Unable To Prove, that Neubauer Was Involved in the Disputed Contract Termination or that He Was a Party to the Joint Venture Agreement.**

Finally, defendant Neubauer respectfully submits that this Court should dismiss him from this action because (1) Plaintiffs have failed to allege any fact (a) which supports that Neubauer was involved in any manner in either the negotiation of the Agreement, the execution of the Joint Venture Agreement, or in the disputed termination of that agreement, or (b) which supports any breach of contract claim against Neubauer, and (2) because Plaintiffs will not be able to present any evidence showing that Neubauer had any involvement in the facts giving rise to Plaintiffs' breach of contract action, or that he incurred any obligation under the Joint Venture Agreement.

**1.    No Allegations that Neubauer Was Involved in the Disputed Contract Termination.**

Plaintiffs' First Amended Complaint (the "Complaint") fails to allege any facts to support any involvement by Neubauer with the Joint Venture Agreement, the Joint Venture or any

15

connection with ARAMARK or Plaintiffs.[7] The Complaint does not allege that Neubauer was an

agent of ARAMARK or an agent of any other party to the Agreement. Apart from naming

Neubauer as a defendant in the Complaint, neither Plaintiffs' initial Petition filed in state court,

nor their Complaint filed in this Court, asserts any allegation concerning Neubauer's involvement

with or relation to Exquisito, ARAMARK, the Joint Venture, the Joint Venture Agreement, or its

disputed termination.

Rather, Plaintiffs have used indiscriminately the term "defendants" throughout the

Complaint, in order to mask the obvious lack of allegations directed at Neubauer. Paragraph I, II

and II of the Complaint are merely introductory allegations describing the parties to the suit.

Paragraph VI of the Complaint alleges that "[o]n or about December 13, 1983, the parties formed

a joint venture . . ." Plaintiffs' use of the term "parties" must refer not to the parties to the lawsuit

but to the parties to the Joint Venture Agreement. The parties to the Joint Venture Agreement

were ARA Leisure Services, Inc. and Exquisito Service, Inc. Neubauer was not a party to the

Agreement, nor was he a signatory or witness to the Agreement. *See* Exhibit "A". Likewise, the

parties to the Concession Agreement were NOPFMI and the Joint Venture; and Neubauer was

neither a signatory nor a witness to the Concession Contract. *See* Exhibit "B". Despite the fact

that Neubauer is not a party to the Joint Venture Agreement or the Concession Contract, or even

a signatory or witness thereto, Plaintiffs allege the "parties" provided concession services to the

New Orleans Convention Center. Complaint, Paragraphs VII, IX. Thus, Plaintiffs' use of the

---

[7]      Plaintiffs' Complaint did not incorporate the original Petition filed in state court. However, there
are no facts alleged in the original Petition that would support a finding that Neubauer was involved in
any manner with the facts giving rise to this breach of contract claim.

term "parties" must be interpreted as referencing the parties to the Joint Venture Agreement, to which Neubauer was not a party.

Furthermore, the allegations in Paragraph VIII assert what Plaintiffs would like this Court to believe was the event that forms the basis of this contract dispute - the fact that NOPFMI assigned the entire interest in the Concession Contract to ARAMARK, as the successor in interest to the Joint Venture.[8]  Not surprisingly, Plaintiffs do not mention Neubauer in these allegations central to Plaintiffs' contract claim.  Similarly, in Paragraph XI, Plaintiffs aver that the "defendants acted in bad faith in terminating the joint venture agreement."  Again, Plaintiffs do not describe any action on the part of Neubauer that relates to the termination of the agreement.

Finally, in Paragraph XIII, which apparently sets forth the basis for damages for lost anticipated profit, Plaintiffs allege, "defendants continued to and still is providing" services under the Concession Contract.  Neubauer is not specifically mentioned in this final allegation, either, because he has never been a party to either the Joint Venture Agreement or the Concession Contract, and therefore has no obligation to provide any services under the Concession Contract, and, more importantly, has no right to remuneration for any such services.

Moreover, Plaintiffs will not be able to offer any evidence to prove Neubauer's connection to or involvement with the Joint Venture, the Joint Venture Agreement, the Concession Contract or with ARAMARK or Exquisito.  The documentary evidence in this case,

---

[8]     As defendants have previously explained in this Memorandum in Support of Motion for Summary Judgment, it was Plaintiffs who breached the Joint Venture Agreement, and Exquisito's interest in the Agreement was terminated at latest by June 1, 1989.  Nevertheless, Plaintiffs, in an attempt to avoid prescription of any contract claim, have fashioned the date of the alleged breach by ARAMARK at the time NOPFMI assigned the Concession Contract to ARAMARK

17

which is comprised mainly of the Joint Venture Agreement, the Concession Contract, and ARAMARK's correspondence, no where mentions Neubauer. *See* Plaintiffs' Exhibit List and Defendant's Proposed Witness and Exhibit Lists; *see also* Exhibit "H", *in globo*, (Defendant's Proposed Witness and Exhibit List, and all documents specifically identified on defendant's "may use" exhibit list). A perusal of much of the documentary evidence in this case shows that (1) Neubauer is not a signatory or witness to any contract; (2) he is not the drafter or recipient of any correspondence regarding the Joint Venture Agreement; (3) he is not copied on any of the correspondence; and (4) his name is not mentioned in any letter, or contract. Neubauer was not involved in any manner with ARAMARK or the Joint Venture, and Plaintiffs will not be able to present evidence to the contrary. Because Plaintiffs bear the burden of proving any claim against Neubauer, Plaintiffs' lack of evidence as to Neubauer's involvement in some way with the alleged breach of contract is sufficient basis for the grant of summary judgment, dismissing him from this action. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552-2553; *Fontenot*, 780 F.2d at 1195-1196 (absent evidence to support each essential claim of a plaintiff's claim, summary judgment is appropriate; conclusory allegations are insufficient to defeat a summary judgment motion).

### 2. Neubauer Cannot be Liable for Damages for Breach of a Contract to which He is Not a Party.

Plaintiffs' Complaint includes only conclusory allegations that Neubauer should be held personally liable for the alleged breach of a contract, the Joint Venture Agreement, to which he was not a party or a signatory. A claim for damages for breach of contract asserted against a person not a party or signatory to the contract cannot lie, because only an obligor may be liable

for such damages. La. Civ. Code. art. 1994 ("An obligor is liable for the damages caused by his failure to perform the conventional obligation."). Because Neubauer was not a party to the Joint Venture Agreement, he incurred no contractual obligations to Exquisito or Dickerson. La. Civ. Code art. 1906 ("A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."). Thus, there can be no personal liability based on a claim of breach of contract for a person who is not a party to the contract, and there are no allegations in the Complaint, or facts which may be proved, that Neubauer was a party to the Agreement, or an agent to any party to the Agreement. Therefore, it is clear that no contract-based claim may be asserted against Neubauer who is not a party to the Joint Venture Agreement.

With no contract claim to assert against Neubauer, Plaintiffs have no other claim that may be asserted against Neubauer. A claim based on any other theory of recovery against Neubauer would have long prescribed before Plaintiffs filed their suit.[9]   Any claim based in tort, would have prescribed over nine years before Plaintiffs filed their suit. Furthermore, Plaintiffs have not alleged any facts that would support any other theory of recovery against Neubauer.

Plaintiffs' bare bones allegations in the Complaint do not asset any claim against Neubauer, personally, and Plaintiffs will be unable to present evidence supporting any such claims. Therefore, defendants respectfully request that this Court dismiss Neubauer from this action, with prejudice.

---

[9]      As defendants have previously explained, even the claim for breach of contract against ARAMARK prescribed prior to the time suit was filed.

### III.   CONCLUSION

Based on the foregoing reasons, defendants, ARAMARK Sports and Entertainment Services, Inc. and Joseph Neubauer, respectfully request that this Court dismiss Plaintiffs' suit with prejudice, upon finding that Plaintiffs' claims are time barred, because suit was not filed on this breach of contract claim until over ten years after the date of the termination of the Joint Venture/Partnership Agreement, and over ten years after Plaintiffs had actual notice of those events. Alternatively, in the event that this Court grants defendants' Motion to Strike Plaintiffs' Expert Witness, based on Plaintiffs' failure to timely identify an expert and failure to submit an expert report, ARAMARK respectfully requests that this Court dismiss with prejudice Plaintiffs' suit based on a breach of contract claim because Plaintiffs will not be able to prove actual damages as required under Louisiana law to recover in a contract claim. Finally, defendants respectfully request that this Court dismiss all claims against Joseph Neubauer, with prejudice, upon finding no claim for breach of contract may be asserted against him, where he is not a party

to any relevant contract, and/or upon finding that he had no involvement in the facts giving rise

to the present contract dispute, and that Plaintiffs have alleged none

Respectfully submitted,

**E. FREDRICK PREIS, JR. (10704)**
**CRAIG L. CAESAR, T.A. (19235)**
McGLINCHEY STAFFORD
Professional Limited Liability Company
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR ARAMARK SPORTS**
**AND ENTERTAINMENT SERVICES, INC.**
**AND JOSEPH NEUBAUER**

310147.1

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed this _19__ day of February, 2002.

Craig L. Caesar

310147 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

EXQUISITO SERVICES, INC.    *
AND WILLIAM DICKERSON      **CIVIL ACTION**
  Plaintiffs        *  **NO. 00-0049**

    **VERSUS**     *

             **SECTION "S"**

ARAMARK SPORTS AND     *
ENTERTAINMENT SERVICES, INC.
AND JOSEPH NEUBAUER,    *
  Defendants        **MAG. DIV. 5**
 *  *  *  *  *  *  *  *

## ORDER

  UPON CONSIDERATION of the foregoing Motion for Summary Judgment filed by

defendants, ARAMARK Sports and Entertainment Services, Inc. and Joseph Neubauer,

  IT IS HEREBY ORDERED that defendants' Motion for Summary Judgment be and the

same is hereby GRANTED;

  AND IT IS FURTHER ORDERED that plaintiffs' suit be dismissed, with prejudice.

  New Orleans, Louisiana, this _____ day of _____, 2002.


           _____

             **J U D G E**

316210 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC.** | * | |
| **AND WILLIAM DICKERSON** | | **CIVIL ACTION** |
|     **Plaintiffs** | * | **NO. 00-0049** |
| | | |
|      **VERSUS** | * | |
| | | **SECTION "S"** |
| **ARAMARK SPORTS AND** | * | |
| **ENTERTAINMENT SERVICES, INC.** | | |
| **AND JOSEPH NEUBAUER,** | * | |
|     **Defendants** | | **MAG. DIV. 5** |

\*   \*   \*   \*   \*   \*   \*   \*

**NOTICE OF HEARING**

TO:   Exquisito Services, Inc. and
      William Dickerson
      through their attorney of record,
      Linda Ritzie, Esq.
      3408 North Beltline Drive
      Mobile, Alabama 36617

PLEASE TAKE NOTICE that defendants, ARAMARK Sports and Entertainment Services, Inc. and Joseph Neubauer, will bring on for hearing the attached Motion for Summary Judgment, before the Honorable Mary Ann Vial Lemmon, Judge, United States District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, on the 6th day of March, 2002 at 10:00 a.m., or as soon thereafter as counsel for mover may be heard.

Respectfully submitted,

E. FREDRICK PREIS, JR. (10704)
CRAIG L. CAESAR, T.A. (19235)
McGLINCHEY STAFFORD
Professional Limited Liability Company
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR ARAMARK SPORTS
AND ENTERTAINMENT SERVICES, INC.
AND JOSEPH NEUBAUER**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed this *19th* day of February, 2002.

Craig L  Caesar

316210 1

2

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED