FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAR -6  AM 8: 48

LORETTA G. WHYTE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EXQUISITO SERVICES, INC., and WILLIAM DICKERSON | CIVIL ACTION |
| VERSUS | NO. 00-0049 (49) |
| ARAMARK SPORTS, AND ENTERTAINMENT, INC. AND JOSEPH NEUBAUER | SECT.S MAG. 5 |

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiffs, Exquisito Services, Inc., and William Dickerson through undersigned counsel who respectfully submits their Opposition to Motion for Summary Judgment on grounds that there are genuine issues as to material facts in this case, as is more fully set out in the memorandum in support of this opposition.

**WHEREFORE**, Plaintiffs move this Honorable Court to find that there are genuine issues as to material facts to be tried by the jury in this case, and that the defendants are not entitled to motion for summary judgment as a matter of law.

Respectfully submitted:

*/s/ Linda Ritzie/*
Linda Ritzie (La. Bar. # 20342)
3408 North Beltline Dr.
Mobile, Ala 36617
(251) 452-3512

Fee____
Process____
X/Dktd____
CtRmDep____
Doc. No.____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC.,** | * | **CIVIL ACTION** |
| **and WILLIAM DICKERSON** | * | |
| | * | **NO. 00-0040** |
| **VERSUS** | * | |
| | * | **SECT. S MAG. 5** |
| **ARAMARK SPORTS, AND** | * | |
| **ENTERTAINMENT, INC. AND** | * | |
| **JOSEPH NEUBAUER** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been mailed, postage prepaid to, Mr. Craig Caesar, 643 Magazine St., New Orleans, and La 70130, New Orleans, La. 70163-2300.

Mobile, Alabama, this 5th of March, 2002.

_____
Linda Ritzie

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EXQUISITO SERVICES, INC., | * | CIVIL ACTION |
| and WILLIAM DICKERSON | * | |
| | * | NO. 00-0040 |
| VERSUS | * | |
| | * | SECT.S MAG. 5 |
| ARAMARK SPORTS, AND | * | |
| ENTERTAINMENT, INC. AND | * | |
| JOSEPH NEUBAUER | * | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

This memorandum is respectfully submitted in support of plaintiffs' opposition to defendants' motion for summary judgment.

**FACTS AND PROCEEDINGS:**

On October 10, 1999, this case commenced in state district court, Parish of Orleans, based upon an alleged breach of contract. Plaintiffs allege that on or about December 13, 1983, the parties formed a joint venture for the purpose of providing the food, beverage, catering and related concession services at the New Orleans Convention Center ("the Center") in accordance

with the Request for Proposal issued by the New Orleans Exhibition Hall Authority.

In order to obtain the contract, the City of New Orleans required that a certain amount of the contracts were set-aside for minority participation. The plaintiffs satisfied this requirement, thereby facilitating the defendants in qualifying for the contract.

The plaintiffs' amendment alleges that from the commencement of the contract until about October 13, 1989, the parties provided the food, beverage, catering and related concession services at the New Orleans Convention as provided under the joint venture agreement.

On or about, October 13, 1989, defendant, ARA Leisure Services, Inc., entered into an agreement with the New Orleans Public Facility Management, Inc., ("NOPFMI") a quasi-public, non-profit corporation organized under the State of Louisiana for the food, beverage, catering and related concession services at the New Orleans Convention. The defendants maintained in the contract with NOPFMI that it was the successor in interest of the Joint Venture/Partnership Agreement as a result of the termination and cancellation of the 1983 Agreement was effective as of the date effective date of 1989 Agreement.

## LAW AND ARGUMENT

### I. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is proper only 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482 (5th Cir. 2000) (quoting Fed.R.Civ.P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In making this assessment, this court will not weigh the evidence or evaluate the credibility of witnesses. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986)).

Summary Judgment is proper if the movant demonstrates that there is an absence of genuine issues of material facts. Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). If the moving party carries his initial burden, the burden falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 584-86, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); *See Boeing Company v. Shipman*, 411 F. 2d 365, 374 (5th Cir. 1969)(En banc).

The moving party bears the burden of showing the district court that there is an absence of evidence to support the nonmoving party's case. See *id*. at 325. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "A dispute over a material fact is genuine `if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith*, 158 F.3d at 911 *(quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The substantive law determines which facts are material. See Anderson, 477 U.S. at 248. In so doing, the court must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences

in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

In this case, the defendant has presented no pleadings, depositions, answers to interrogatories and admissions on file, or affidavits, to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Instead, the defendant relies upon letters written to third parties that contain hearsay within hearsay to support their conclusory declaration that the plaintiffs claims for breach of contract is prescribed or at least began to run in July, 1989.

Although the defendants state that Exquisito was on notice of being in default of the contract based upon allegation of an attempted unauthorized assignment of Exquisito's interest in the Joint Venture, the defendants have failed to present even a scintilla of evidence to show there was any unauthorized of attempted assignment of Exquisito's interest in the Joint Venture. However, the most that has been claimed is that "Exquisito attempted to make an unauthorized assignment that would have no effect. At the very least, there should have been some tangible proof of the attempted assignment.

Moreover, if there was only an attempt and the assignment was never actually accomplished, then clearly there was no "unauthorized assignment"

5

as contemplated by the contract and not just the "attempted unauthorized assignment."

According to the "Miscellaneous" provisions of the Joint Venture/Partnership Agreement, Paragraph "F" provides as follows:

> "...F. No party to this Agreement may assign, pledge, transfer, or otherwise dispose of its interest in the Joint Venture or any assets thereof or in the Concession Contract without the written approval of the other partner...." (See Agreement Para. VII (F))

The agreement provides a separate section wherein the parties outlined their understanding of what constituted a default as follows:

> "...VI. **DEFAULT**
>
> A. Failure by either partner to make any required contributions to the Joint Venture shall constitute a default under this Agreement; provided the Joint Venture gives the defaulting party written notice specifying the default and the defaulting party fails to cure within fifteen (15) days.
> B. In the event a partner is in default, then, in addition to other remedies under the law and under the Agreement, such defaulting partner shall not vote on Joint Venture matter; attend meetings; share in distribution(s) of net cash flow; and interest shall accrue at the rate of "prime" determined by The Chase Manhattan Bank, determined on the first day of each month for such, plus one percent per annum on all sums in default. In such event, accounting otherwise distributable to such partner in default may setoff against owed to the Joint Venture or to the other party heretounder.
>    When any such default is cured, sharing of the net cash flow shall resume as of the date of such core.
> C. In lieu of permitting a defaulting partner to continue as a partner if such default has not been cured for sixty (60) days, the Joint Venture, at any time any default exists, may terminate the interest

> of the defaulting partner under this Agreement by causing an independent certified accountant to determine the value of the capital account of the defaulting party and by paying such amount to the partner, less any amounts owed to the Joint Venture or other party. In making this determination, the independent certified public accountant shall not give value of the Concession Contract...."

It appears clear from the above provisions of the Agreement that the intent of the parties was to specify what constituted a default in Section VI. Clearly, if the provision regarding assigning the interest in the Agreement had been intended to constitute a default under the Agreement it would have been specifically included under to provisions entitled "Default" and not under a separate provision entitled "Miscellaneous".

Most importantly, the defendants specifically provided in the October 13, 1989 Agreement for the cancellation and termination of the 1983 Agreement as follows:

> "...72. THE 1983 AGREEMENT
>
> Pursuant to the Assignment, Assumption, and Consent Agreement With Indemnity dated [October 13, 1989] (a copy of which is attached hereto as Schedule 5,) the Operating Corporation has given its consent to the assignment of the 1983 Agreement by the Joint Venture to the Contractor and the assumption thereof by the Contractor. In addition, the 1983 Agreement is hereby cancelled and terminated as of the effective date of this Agreement...." A copy of the 1989 Agreement, is attached hereto as Exhibit "1."

## II.  LOST PROFITS

While recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty.  While this *reasonably certain evidence* determination is a fact intensive inquiry, opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained

The principal issue in this case is whether the plaintiffs will carried their burden to prove with reasonable certainty of the loss of past and future profits. The burden of proof as to the loss of past profits is usually heavier than that of future profits because the time period for which the loss of past profits is a fixed period in the past whereas the time period for the loss of future profits depends upon factors, which may or may not take place.

In this case,  loss of past profits  for the years 1989-1999 are easily determined because they were set out in the Agreement as to the distribution of the profits.  As to the lost business opportunity because of the expansion of the convention center, again the percentage ownership contained in the Agreement  can easily be determined based upon the gross receipts for those years.  A copy of the  1983 Agreement is  attached as Exhibit "2."

8

The plaintiffs have presented undisputed testimony in the form of affidavits to the effect that "[t]hey did not assign the interest of Exquisito in the Joint Venture," that Exquisito had a 25% ownership interest in the Joint Venture which represented the percentage of distribution of the net profits, in addition to a monthly allowance for overhead and administrative expenses of 11/4% of gross receipts. (See Exhibit "3" in globo.) The statements contained in an affidavit are to be accepted as true and not in the province to be judged whether the statements are, in fact, true. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1988). Instead, the court can conclude that the plaintiffs have gone beyond his pleadings and have established a genuine issue of material fact with respect to this factor.

In *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La. 1993), *certiorari denied, Maritime Overseas Corp. v. Youn*, ___ U.S. ___, 114 S. Ct. 1059, 127 L.Ed.2d 379 (1994), the trial court adopted the jury verdict with respect to the amount of the damage award. Consideration of the jury's determination of damages is limited to a review for abuse of discretion on appeal. The discretion vested in the trier of fact is "great," and even vast, in determining the amount of damages. When damages are insusceptible of precise measurement, much discretion is left to the court for its reasonable assessment. La.C.C. art. 1999; *Coco v. Winston Industries, Inc.*, 341 So.2d

9

332 (La. 1976). The reviewing court must evaluate the particular injuries and their effects on the particular injured persons. *Reck v. Stevens*, 373 So.2d 498 (La. 1979). Only after a determination of an abuse of discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point that is reasonably within that discretion. *Youn, supra.*

While recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty. While this *reasonably certain evidence* determination is a fact intensive inquiry, opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081, 1092 (La. 1983).

In the case of *Mobile Chemical Co. v. Blount Bros. Corp.*, 809 F.2d 1175 (5th Cir. 1987), Blount's second argument was that Newtron and Sauer did not establish a "legal basis" for the amount of their damages. The court noted that this seems to be either an argument that there was insufficient evidence to support the district court's damage award, that the damages were too uncertain to be recoverable, or that the damages were not caused by Blount's negligence and breach. Once again, the court stated that what starts out as a "legal" argument slides into an argument about the facts. The court

made it clears that: "the amount and causality of damages was not established with unshakable certainty, but that is not required. The fact-finder's task is more limited:

> Actual damages must be proven; they cannot be merely speculative or conjectural. While the breaching party should not escape liability because of the difficulty in finding a perfect measure of damages, the evidence must furnish data for a reasonably accurate estimate of the amount of damages. It must be reasonably evident that the amount allowed rests upon a certain basis.
>
> The amount and measure of damages must be determined in relation to the particular contract in issue and the circumstances surrounding its breach. The question of t he certainty of proof of damages becomes a matter for decision in each individual case. (Quoting *Nat Harrison Associates v. Gulf States Utilities Co.,* 491 F.2d 578, 587 (5th Cir. 1974) (citations omitted)."

Moreover, the Fifth Circuit stated that because this individualized sifting of the evidence should not be repeated at a trial de novo in the Court of Appeals, *see Anderson v. City of Bessemer City,* 470 U.S. at 573, 105 S.Ct. at 1512, the Courts have held that damage awards are findings of fact which we will reverse only upon clear error. *See NCH Corp. v. Broyles,* 749 F.2d 247, 254 (5th Cir. 1985).

11

III.  **DISMISSAL OF NEUBAUER AS PARTY TO SUIT**

The plaintiffs after careful consideration with counsel have no objection to dismissing Mr. Neubauer as a defendant in this case.

**CONCLUSION:**

Plaintiffs have clearly demonstrated there are genuine issues as to material facts to be tried by the jury in this case, and that Summary Judgment is not proper because the defendants (movants) have failed to demonstrates that there is an absence of genuine issues of material facts, thus they are not entitled to motion for summary judgment as a matter of law.

Respectfully submitted:

*Linda Ritzie*
Linda Ritzie (La. Bar # 20342)
3408 North Beltline Dr.
Mobile, Ala 36617
(251) 452-3512

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EXQUISITO SERVICES, INC.,** | * | **CIVIL ACTION** |
| **and WILLIAM DICKERSON** | * | |
| | * | **NO. 00-0040** |
| **VERSUS** | * | |
| | * | **SECT.S MAG. 5** |
| **ARAMARK SPORTS, AND** | * | |
| **ENTERTAINMENT, INC. AND** | * | |
| **JOSEPH NEUBAUER** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that at copy of the above and foregoing Memorandum in support of plaintiffs' opposition to summary judgment has been served on Mr. Craig Caesar, 643 Magazine St., New Orleans, La 70130, via U. S. Mail, postage prepaid and properly addressed.

Mobile, Alabama this 5th day of March, 2002.

Linda Ritzie

13

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED