RECEIVED

MAR 1 9 2002

U. S. DISTRICT JUDGE
MARY ANN VIAL LEMMON

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 MAR 20  AM 9: 37

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

EXQUISITO SERVICES INC.            *
AND WILLIAM DICKERSON              *        CIVIL ACTION
                      PLAINTIFFS   *
                                   *
VERSUS                             *        CASE NO. 00-0049
                                   *
ARAMARK SPORTS AND                 *        SEC. "S"
ENTERTAINMENT SERVICES, INC.       *
AND JOSEPH NEUBAUER                *        MAG. DIV. 5
                      DEFENDANTS   *
                                   *

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## PRE-TRIAL ORDER

### 1.

A Pretrial conference was held before Honorable Mary Anne Vial Lemmon on the 22nd day

of March, 2002, at 9:30 o'clock  a. m., in New Orleans, Louisiana

### 2.

Present were the following:

For Plaintiffs- Exquisito Services, Inc.,        For Defendant ARAMARK Sports
 and William Dickerson                            and Entertainment Services, Inc,
Linda Ritzie, T.A. (#20342)                      (f/k/a ARA Leisure Services, Inc.)
3408 North Beltline Dr.                          E. Frederick Preis, Jr. (#10704)
Mobile, Alabama 36617                            Craig L. Caesar, T.A. (#19235)
(251) 342-3517                                   McGlinchey Stafford, PLLC
                                                 643 Magazine Street
                                                 New Orleans, LA 70130-3477
                                                 (504) 586-1200

DATE OF ENTRY

MAR 2 5 2002

Fee_____
Process_____
X  Dktd 19
___ CtRmDep
___ Doc. No. 43

**3.**
**PARTIES**

1.     Plaintiff, Exquisito Services, Inc., a domestic corporation, organized under the laws of the State of Louisiana.

2.     Plaintiff, William Dickerson, is a citizen of the United States of America and was at all times relevant herein was domiciled in the Parish of East Baton Rouge, Louisiana.

3.     Defendant, ARAMARK Sports and Entertainment Services, Inc., (formerly known as ARA Leisure Services, Inc.), a foreign corporation, organized under the laws of the State of Delaware.

**4.**
**BASIS OF JURISDICTION**

A     On October 13, 1999, this case commenced in state district court, Parish of Orleans, based upon an alleged breach of contract, and was subsequently removed to this Court.

B.     Jurisdiction over the breach of contract is conferred by 28 U.S.C. Section 1332 (a); venue of this action is proper pursuant to 28 U.S.C. 1391 (a) and (c).

C.   The amount in controversy exceeds the requisite $75,000.00 jurisdictional amount.

**5.**
**PENDING OR CONTEMPLATED MOTIONS**

Currently pending before the Court are Defendants' Motion for Summary Judgment and Defendants' Motion to Strike Plaintiffs' Expert Witness, and Other Fact Witnesses and Exhibits. Defendant contemplates filing motions in limine with respect to certain of the trial witnesses designated by plaintiffs.

**6.**
**SUMMARY OF MATERIAL FACTS**

A.     **Brief Summary of Material Facts Claimed by Plaintiffs:**

Plaintiffs allege that on or about December 13, 1983, the parties formed a joint venture for the purpose of providing the food, beverage, catering and related concession services at the

New Orleans Convention Center (the "Center") in accordance with the Request for Proposal issued by the New Orleans Exhibition Hall Authority. The joint venture was signed on the same day as a Food/Beverage Concession Contract for the New Orleans Convention Center between the joint venture and the New Orleans Public Facility Management, Inc., ("NOPFMI"). Pursuant to which the joint venture was to provide services to the Convention Center.

In order to obtain the contract, the City of New Orleans required that a certain amount of the contracts were set-aside for minority participation. The plaintiffs satisfied this requirement, thereby facilitating the defendants in qualifying for the contract.

The plaintiffs' amendment alleges that from the commencement of the contract until about October 13, 1989, the parties provided the food, beverage, catering and related concession services at the New Orleans Convention as provided under the joint venture agreement.

On or about, October 13, 1989, defendant, ARA Leisure Services, Inc., entered into an agreement with the New Orleans Public Facility Management, Inc., ("NOPFMI") a quasi-public, non-profit corporation organized under the State of Louisiana for the food, beverage, catering and related concession services at the New Orleans Convention. The defendants maintained in the contract with NOPFMI that it was the successor in interest of the Joint Venture/Partnership Agreement as a result of the termination and cancellation of the 1983 Agreement. Plaintiffs maintain that they became aware that of the alleged cancellation on the effective date of 1989 Agreement that was signed about October 13, 1989. Therefore, the lawsuit filed in state court was timely.

Moreover, pursuant to the Assignment, Assumption, and Consent Agreement With Indemnity dated [October 13, 1989]) the Operating Corporation (NOPFMI) gave its consent to the assignment of the 1983 Agreement by the Joint Venture to the Contractor (ARAMARK) and

3

the assumption thereof by the Contractor (ARAMARK). In addition, the 1983 Agreement was cancelled and terminated as of the effective date of the 1989 Agreement.

Plaintiffs further aver that recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty. While this *reasonably certain evidence* determination is a fact intensive inquiry, opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.

In this case, loss of past profits for the years 1989-1999 are easily determined because they were set out in the Agreement as to the distribution of the profits. As to the lost business opportunity because of the expansion of the convention center, again the percentage ownership contained in the Agreement can easily be determined based upon the gross receipts for those years.

Plaintiffs aver that the breaching party - ARAMARK should not escape liability because it declares that the plaintiff will have difficulty in finding a perfect measure of damages, the evidence must furnish data for a reasonably accurate estimate of the amount of damages. Plaintiff will be able to present reasonably evident that the amount allowed rests upon a certain basis. Moreover, the amount of damages must be determined in relation to the particular contract in issue and the circumstances surrounding its breach.

**B.    Brief Summary of material Facts Claimed by Defendant:**

This case arises out of an alleged breach of a joint venture agreement that was entered into on December 13, 1983, between ARA Leisure Services, Inc., a predecessor corporation to defendant, ARAMARK Sports and Entertainment Services, Inc. (together "ARAMARK"), and the corporate plaintiff, Exquisito Services, Inc. ("Exquisito"). The joint venture was signed on

4

the same day as a Food/Beverage Concession Contract for the New Orleans Convention Center between the joint venture and the New Orleans Public Facility Management, Inc. ("NOPFMI"), pursuant to which the joint venture was to provide services to the Convention Center. In the Spring of 1989-more than ten (10) years prior to filing of this lawsuit-ARAMARK lawfully terminated the joint venture agreement based on its learning that Exquisito was seeking to assign its rights under the joint venture agreement to a third party. Such assignment apparently was sought to address financial difficulties that had previously prompted Exquisito to seek Chapter 11 bankruptcy protection in 1986, although ARAMARK, its joint venture partner, appears not to have been informed of the bankruptcy filing at the time, and the joint venture agreement was not listed in the schedules filed by the debtor-in-possession.

The joint venture agreement required that ARAMARK consent to any assignment of Exquisito's interest, which it was not willing to do. Having determined to terminate the joint venture because of Exquisito's anticipated or actual breach, ARAMARK took all of the steps required under the joint venture agreement to effect termination of the joint venture. In addition to sending the appropriate notice of default by certified mail on March 14, 1989, to the address set forth in the joint venture agreement, ARAMARK also sent certified mail notices to the individual plaintiff, William Dickerson, ("Dickerson"), and to Carlton Pecot, both of whom were principals of Exquisito. From correspondence received by ARAMARK in July 1989 during negotiations with attorneys representing the interest of NOPFMI to reform and extend ARAMARK's relationship regarding the Convention Center, it is clear that Exquisito and Dickerson had notice of ARAMARK's termination of the joint venture, which became effective in May 1989, following the expiration of a 60-day cure period.

In October 1989, ARAMARK entered into a new Food/Beverage Concession Contract with NOPRMI for provision of services to the New Orleans Convention Center. The new Food/Beverage Agreement recognized the termination of the interest of Exquisito earlier that year.

After the termination of its joint venture interest, Exquisito did not receive any payments under the 1983 joint venture agreement, although it had received payments in prior years. Until the filing of the lawsuits in state court by Dickerson acting *pro se* on October 13, 1999, ARAMARK had not received any demand for such payment or notice of any alleged breach of that agreement from Exquisito or Dickerson.

The 1983 joint venture agreement had a term linked to the term of the original Food/Beverage Contract, which was ten (10) years. Options for five consecutive one (1) year extensions of the Food/Beverage Contract also were granted to NOPFMI in that agreement. The 1983 joint venture agreement specifically provided that Exquisito would bear no responsibility or financial obligation as a partner in the joint venture.

As a shareholder of Exquisito, Dickerson has no separate claim for damages arising out of the joint venture agreement to which Exquisito was a party. Lacking an accounting or economics expert, Exquisito has no ability to demonstrate any damages; particularly those based on alleged lost profits or lost business opportunities. In any event, any claim for damages beyond the ten-year term of the original Food/Beverage Contract is barred because such alleged damages are speculative.

Plaintiffs' claims are prescribed.

**C.      A Brief Statement of Claims of Any Other Parties:**

None.

6

## 6.
## UNCONTESTED MATERIAL FACTS

1.      A Joint Venture/Partnership Agreement (the "Agreement" or the "Joint Venture Agreement"), was entered into on December 13, 1983, between ARA Leisure Services, Inc., and Exquisito Services, Inc. ("Exquisito"), creating a joint venture (the "Joint Venture") between the two parties to the Agreement.

2.      Plaintiff, William Dickerson was a principal of Exquisito.

3.      Defendant ARAMARK was formerly known as ARA Leisure Services, Inc.

4.      The Joint Venture Agreement had an initial term of ten (10) years.

5.      Dickerson signed the Agreement on behalf of Exquisito (attested to by C. H. Pecot), and Robert Palumbo signed on behalf of ARAMARK (attested to by Michael Kelly).

6.      The Joint Venture contracted with the New Orleans Public Facility Management, Inc., ("NOPFMI") to provide services to the New Orleans Convention Center, pursuant to a Food/Beverage Concession Contract for the New Orleans Convention Center (the "Concession Contract"), executed the same day as the Agreement.

7       Pursuant to the terms of the Agreement, no party to this Agreement may assign, pledge, transfer, or otherwise dispose of its interest in the Joint Venture or any assets thereof or in the Concession Contract without the written approval of the other partner.

8.      Pursuant to the terms of the Agreement, the Joint Venture could terminate a defaulting partner's interest in the Agreement, upon giving the defaulting partner written notice specifying the default, and granting 60 days to cure the breach.

9.      According to the terms of the Agreement, all notices to Exquisito relating to the Agreement were to be sent be certified mail to "Exquisito Services, Inc., Attn: President, 1620 Melpomene St., New Orleans, LA 70130."

10.     Exquisito Services did not receive any payment from ARAMARK pursuant to the Joint Venture Agreement after 1989.

## 7.
## CONTESTED ISSUES OF FACTS

**Plaintiffs:**

1.      Whether the plaintiff actually attempted to assign its interest in the Joint Venture Agreement.

2.    Whether the plaintiffs' burden is to prove with reasonable certainty of the loss of past and future profits in order to be entitled to those damages.

3.    Whether the plaintiffs are required to prove loss susceptible to exact calculation in order to recovery lost profits.

4.    Whether Exquisito Services Inc. ever perfected any assignment of its interest in the Joint Venture Agreement.

5.    Whether ARAMARK was ever required to submit a new bid for a new Food/Beverage Concession Contract for the New Orleans Convention Center pursuant to which, ARAMARK alone was to provide services to the Convention Center.

6.    All the issues of fact implicit in the pleadings, statement of material facts, and contested issues of law.

**Defendant:**

1.    Whether some time prior to March 14, 1989, ARAMARK received information that Exquisito had assigned its interest in the Agreement to another entity, Exquisite Supreme Caterers, Inc., who was not a party to the Agreement, without ARAMARK's consent.

2.    Whether the certified-mail letter notifying Exquisito of its default and commencing the running of the cure period, was addressed to "Exquisito Services, Inc., Attention: President," and to Exquisito's address listed in the Joint Venture Agreement and was returned to ARAMARK by the postal service because Exquisito's mail-forwarding address had expired.

3.    Whether the default notice was sent to Exquisito by ARAMARK.

4.    Whether notification of the breach based on the assignment of Exquisito's interest in the Agreement to Exquisite Supreme Caterers, Inc., conformed to the terms of the Agreement.

5.    Whether by ARAMARK's sending a notification letter by certified mail to the address listed in that contract, the cure period began running by April 1, 1989.

6.    Whether the 60-day cure period provided for by the terms of the Agreement had completed running at the latest by June 1, 1989.

7.    Whether ARAMARK met and exceeded its obligation under the Agreement in order to notify Exquisito of its breach of the terms of the Agreement and to commence the running of the cure period, and to give Exquisito the opportunity to respond and cure the breach.

8.    Whether Dickerson had actual knowledge: (1) that Exquisito's interest in the Joint Venture Agreement was terminated in the Summer of 1989, and (2) that Exquisito's participation was similarly terminated in the Concession Contract with NOPFMI.

9.      Whether Dickerson's actual knowledge of these events is confirmed in correspondence dated July 1989.

10.     Whether in response to a letter sent by Steven Chouest, Dickerson or his counsel telephoned Chouest on July 5, 1989, and discussed Exquisito's involvement in the NOPFMI Food/Beverage Concession Contract

11.     Whether later that same month, July 1989, Mr. Dickerson again telephoned Stephen Chouest's office and requested that Chouest meet with Dickerson's attorney, Mr. William Aaron, "in order to meet and discuss the status of the Joint Venture and related issues."

12.     Whether Dickerson and Exquisito had actual knowledge that ARAMARK was terminating Exquisito's interest in the Agreement, based on Exquisito's breach of the terms of the Agreement.

13.     Whether after the principals of Exquisito received the March 14, 1989, notice of its breach of the Agreement, and after the Joint Venture terminated Exquisito's interest in the Joint Venture in June 1989, on October 13, 1989, NOPFMI assigned the entire interest in the Concession Contract to ARAMARK.

14.     Whether despite the actual knowledge of Exquisito and Dickerson regarding the termination of Exquisito's interest in the Joint Venture (at earliest by March, 1989, and the latest by July 5, 1989), and despite the fact that Dickerson had requested a meeting between NOPFMI and Dickerson's lawyer, Mr. William Aaron, in July, 1989, Dickerson did not file the present suit against ARAMARK and Neubauer based on alleged breach of the Joint Venture Agreement until October 13, 1999 -- over ten years after Exquisito's interest in the Agreement terminated.

15      Whether Exquisito has suffered any damages as a result of the alleged contractual breach committed by ARAMARK.

16.     Whether, pursuant to the terms of the Agreement, ARAMARK sent a letter dated March 14, 1989, by certified mail to Exquisito address listed in the Agreement.

17.     Whether the letter of March 14, 1989, notified Exquisito that any assignment of its interest in the Agreement was in breach of the terms of the Agreement, and informed Exquisito that it had 60 days to cure this breach, or else the Joint Venture would terminate the interests of Exquisito as a partner in the Joint Venture.

18.     Whether the Joint Venture Agreement required no other action on the part of ARAMARK in order for the 60-day cure period to start running.

19.     Whether, in addition to sending a notification letter by certified mail to the address listed in the Agreement, ARAMARK also sent a copy of the March 14, 1989, notification letter, by certified mail, to Mr. Carlton H. Pecot of Exquisito Supreme Caterers and to Mr. William Dickerson at Granite Financial Services.

19.     Whether the plaintiffs can prove any damages.

20.     Whether the plaintiffs failed to mitigate any damages that they may have suffered.

21.     All the issues of fact implicit in the pleadings, statement of material facts, and contested issues of law.

## 8.
## CONTESTED ISSUES OF LAW

**Plaintiffs:**

1.      Whether the defendant wrongfully terminated  the Joint Venture Agreement which constituted a breach of contract.

2.      Whether the conduct of defendant was of such a nature to support a claim under bad faith dealing.

3.      If  the Joint Venture was wrongfully terminate by ARAMARK, whether the plaintiffs are entitled to damages beyond the original contract period.

4.      Whether the breach occurred on the effective date of the October 13, 1989, when ARAMARK entered into a new Food/Beverage Concession Contract with NOPFMI for provision of services to the New Orleans Convention Center.

5.      All of the issues of law implicit in the pleadings, statement of material facts, and contested issues of fact.

**Defendant:**

1.      Whether plaintiffs' cause of action for breach of contract arising out of the termination of the Joint Venture Agreement is time-barred.

2.      Whether ARAMARK breached the Joint Venture Agreement.

3.      Whether the Joint Venture Agreement was lawfully terminated in March, 1989, June, 1989 or October, 1989.

4.      Whether plaintiffs have any legal entitlement to damages.

5.      Whether plaintiffs can claim damages beyond the initial term of the Joint Venture Agreement.

6.      All the issues of law implicit in the pleadings, statement of material facts, and contested issues of  fact.

**9.**
**EXHIBITS**

**A.**    **Joint Exhibits:**

1.    12/13/1983 Joint Venture Partnership Agreement between ARA Leisure Services, Inc., and Exquisito Services, Inc.

2.    12/7/1984 Addendum to the Joint Venture /Partnership Agreement between ARA Leisure Services, Inc., and Exquisito Services, Inc.

3.    12/13/1983 Food/Beverage Concession Contract for the New Orleans Convention Center between New Orleans Public Management, Inc., and the joint adventure/partnership comprised of ARA Leisure Services, Inc., and Exquisito Services, Inc.

4.    12/31/1983 Addendum to Food/Beverage Concession Contract for the New Orleans Convention Center between New Orleans Public Facility Management, Inc., and ARA Leisure Services, Inc.

**B.**    **Plaintiffs**:

1.    Copy of a hold harmless letter from ARAMARK to NOPFMI.

2.    Accounting records of the fiscal affairs of the joint venture (1983-1989).

3.    Accounting records of the fiscal affairs of New Orleans Public Facility Management, Inc., and ARA Leisure Services, Inc.

4.    A copy of the New Orleans Codes in effect in 1983.

5.    Any exhibit listed by any party.

6.    Any document listed as an exhibit by any other party to this litigation.

7.    Any pleading and exhibits filed in the record of this matter.

**C.**    **Defendants:**

1.    9/7/1989 Letter from Stephen M. Chouest to Michael C. Kelly, Esq. Re:  New Orleans Convention Center.

2.    7/19/1989 Letter from Stephen M. Chouest to Dan N. Sanders, Jr. re: ARA.

3.    7/5/1989 Letter from Stephen M. Chouest to Dan N. Sanders, Jr. re: Exquisito Services, Inc. Joint Venture with ARA Leisure Services, Inc., ARA Request for NOPFMI Consent to Assignment of Contract.

4.    6/28/1989 Letter from Michael C. Kelley to Stephen M. Chouest, Esquire, re: New Orleans Convention Center.

5.    6/21/1986 Letter from Stephen M. Chouest, Esquire, to Michael C. Kelley, Esq. re: New Orleans Convention Center.

6.    5/23/1989 Letter from Michael C. Kelley to Stephen M. Chouest, Esquire, re: New Orleans Convention Center, with enclosures: (a) 3/14/1989 letter from Michael C Kelley to Carlton H. Pecot, and (b) 3/14/1989 letter fro Michael C. Kelly to William Dickerson.

7.    5/20/1986 Letter from Dan N. Saunders, Jr., to Robert J. Palumbo.

8.    12/20/1983 Letter from Stephen M. Chouest to Alan Kaplan, re: New Orleans Convention Center Food/Beverage Concession Contract.

9.    Any and all documents filed in or related to any bankruptcy proceeding of Exquisito Services, Inc., or any affiliate or affiliated person.

10.    Any document listed as an exhibit by any other party to this litigation.

11.    Any pleading and exhibits filed in the record of this matter.

## 10.
## Witnesses

**Plaintiffs:**

Plaintiffs may call the following witnesses to testify in the trial of this matter·

1.    William Dickerson, Plaintiff and one of the former principals of Exquisito Services, Inc.

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract, services provided by Exquisito, and Damages sustained.

2.    Carlton Pecot- former president of Exquisito

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract, services provided by Exquisito, and Damages sustained.

3.    Joseph Neubauer – President of ARAMARK

> Will testify regarding negotiation of Joint Venture Agreement and 1983
> Food/Beverage Concession Contract, and Damages.

4.    Deborah Vega -Southeastern Regional Finance Director of the Convention Center Div.

> Will testify regarding records and calculations of ARAMARK payments to
> Exquisito during years Joint Venture was in effect.

5.    Charles M. Gillensie -

> Will testify regarding the Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

6.    Michael C. Valley - facts

> Will testify regarding negotiation of Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

7.    Raymond Liuzza-

> Will testify regarding negotiation of Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

8.    Mr. Harold Wesley- facts

> Will testify regarding negotiation of Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

9.    Warren Chandler-facts

> Will testify regarding the Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract

10.    Milton Harris-facts

> Will testify regarding negotiation of Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

11.    Steven Schpiest- Attorney facts

> Will testify regarding negotiation of Joint Venture Agreement and
> 1983 Food/Beverage Concession Contract.

12.    Atty. Joseph Berrigan- facts

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract.

13    Dr. Thompson- Expert witness, Economist

> Will testify regarding damages sustained by plaintiffs as A result of the breach of the Joint Venture Agreement and 1983 Food/Beverage Concession Contract.

14.    Robert Polumbo- a former Vice President of ARAMARK                    .

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract.

15.    John Dee – Former president of the Sports Service Division of ARAMARK

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract.

16.    Ray Davis-facts

> Will testify regarding negotiation of Joint Venture Agreement and 1983 Food/Beverage Concession Contract.

17.    Any witness listed by any party.

18.    Any witness required to rebut the testimony of any other witness called to testify in this matter.

19.    Any witness whose testimony is required to support the authenticity or admissibility of any document offered into evidence as an exhibit at the trial on this matter.

**Defendants:**

Defendant intends to call the following witnesses to testify at the trial on this matter:

1.    Deborah Vegh – Southeastern Regional Finance Director of the Convention Center Division

> Testimony regarding records and calculations of ARAMARK payments to Exquisito during years Joint Venture was in effect.

14

2.     Michael Kelly- former ARAMARK Senior Vice President and Associate general Counsel

        Testimony regarding negotiation of Joint Venture Agreement and 1983
        Food/Beverage Concession Contract and ARAMARK  performance under the
        Food/Beverage Concession Contract.

3.     William Dickerson – former Principal

        Cross-examination

4.     Carlton H. Pecot

        Cross-examination

Defendant may call the following witnesses to testify at the trial of this matter:

1.     Mark Toll- former ARAMARK Regional Vice President

        Testimony regarding ARAMARK performance under the Food/Beverage
        Concession Contract.

2.     William Aaron, Esq.- Mr. Dickerson's attorney as of July, 1989.

        Cross-examination

3.     Representatives(s), including former or current employees and/or legal counsel, New
Orleans Public Facility Management, Inc.

        Testimony regarding Food/Beverage Concession Contracts, relevant
        correspondence and contacts with ARAMARK and Exquisito

4.     Representative(s), including former or current employees and/or legal counsel, of Ernest
N. Morial New Orleans Exhibition Hall Authority

        Testimony regarding Food/Beverage Concession Contracts, relevant
        correspondence and contacts with ARAMARK and Exquisito

5.     Representative(s), including former or current employees and/or legal counsel, of New
Orleans Convention Center

        Testimony regarding Food/Beverage Concession Contracts, relevant
        correspondence and contacts with ARAMARK and Exquisito

6.     Any witness required to rebut the testimony of any other witness called to testify in this
matter.

7.    Any witness whose testimony is required to support the authenticity or admissibility of any document offered into evidence as an exhibit at the trial on this matter.

**11.**

The issue of liability will not be tried separately from that of quantum.

**12.**

The parties are unaware of any matters which might expedite the disposition of this case.

**13.**

Trial in this matter shall commence on May 6, 2002, at 9:00 a.m.

**14.**

Counsel estimate that the case will two days to try.

**15.**
**ADDITIONAL MATTERS**

The parties have stipulated that photocopies of all exhibits listed in Section 9 of this Pre-trial Order may be utilized at trial in lieu of the originals.  The parties have further stipulated as to the authenticity of certain exhibits without the necessity of the testimony of the custodian of any exhibit to establish the authenticity thereof, but reserve  all other objections to any exhibit.

**16.**
**PRETRIAL ORDER CONFERENCE BY COUNSEL**

This Pre-Trial Order has been formulated after conference which  counsel for the respective parties have appeared in person.  Sufficient opportunity has been provided to counsel for corrections or additions prior to signing.  Hereafter, this Order will control the course of the

trial and may not be amended except by consent of the parties and the Court or by the court to prevent manifest injustice.

## 17.
## SETTLEMENT

Possibilities of settlement of this case was considered, the settlement conference was continued pending outcome of Motion for Summary Judgment filed on behalf the defendants.


Dated: March 18, 2002


Respectfully submitted:

**Linda Ritzie (#20342)**    *authorized by Ms. Ritzie*
3408 North Beltline Dr.
Mobile, ALA 36617
(251) 452-3517

Attorney for Exquisito Services, Inc and
William Dickerson

**E. Fredrick Preis, Jr. (#10704)**
**Craig L. Caesar, T.A. (#19235)**
McGlinchey Stafford. PLLC
643 Magazine Street
New Orleans, LA 70130
Attorney for ARAMARK Sports
And Entertainment Services, Inc.

New Orleans, Louisiana this 22 day of _March_ 2002.


**JUDGE MARY ANNE VIAL LEMMON**
United States Judge
U.S. Courthouse
500 Camp Street
New Orleans, Louisiana 70130
Telephone  (504) 589-7565


Doc. #322132 v1

17