FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 APR 26 PM 4: 53

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EXQUISITO SERVICES, INC. AND WILLIAM DICKERSON<br>Plaintiffs | * * | CIVIL ACTION<br>NO. 00-0049 |
| VERSUS | * | SECTION "S" |
| ARAMARK SPORTS AND ENTERTAINMENT SERVICES, INC. AND JOSEPH NEUBAUER,<br>Defendants | * * | MAG. DIV. 5 |

\* \* \* \* \* \* \* \*

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
OF DEFENDANT ARAMARK SPORTS AND ENTERTAINMENT SERVICES, INC.**

Pursuant to the Court's July 26, 2001 Scheduling Order, as amended on November 21, 2001, and January 17, 2002, defendant ARAMARK Sports and Entertainment Services, Inc. ("ARAMARK") respectfully submits its Proposed Findings of Fact and Conclusions of Law.

**PROPOSED FINDINGS OF FACT**

1.  Plaintiff William Dickerson ("Dickerson") was a principal of Exquisito Services, Inc. ("Exquisito"). Pre-Trial Order, Uncontested Material Fact No. 2.

2.  ARAMARK was formerly known as ARA Leisure Services, Inc. Pre-Trial Order, Uncontested Material Fact No 3.

___Fee_____
___Process___
_X_ Dktd _____
___ CtRmDep___
Doc. No __52__

3.  A Joint Venture/Partnership Agreement (the "Joint Venture Agreement"), was entered into on December 13, 1983, between ARA Leisure Services, Inc., and Exquisito, creating a joint venture (the "Joint Venture") between the two parties. Pre-Trial Order, Uncontested Material Fact No. 1.

4.  Dickerson signed the Joint Venture Agreement on behalf of Exquisito (attested to by C. H. Pecot), and Robert Palumbo signed on behalf of ARAMARK (attested to by Michael Kelly). Pre-Trial Order, Uncontested Material Fact No. 5.

5.  The Joint Venture Agreement had an initial term of ten (10) years. Pre-Trial Order, Uncontested Material Fact No. 4.

6.  The Joint Venture contracted with New Orleans Public Facility Management, Inc., ("NOPFMI") to provide services to the New Orleans Convention Center, pursuant to a Food/Beverage Concession Contract for the New Orleans Convention Center (the "Concession Contract"), executed as of the same date as the Joint Venture Agreement. Pre-Trial Order, Uncontested Material Fact No. 6.

7.  Pursuant to the terms of the Joint Venture Agreement, no party to the Joint Venture Agreement could assign, pledge, transfer, or otherwise dispose of its interest in the Joint Venture or any assets thereof or in the Concession Contract without the written approval of the other partner to the Joint Venture. Pre-Trial Order, Uncontested Material Fact No. 7.

8.  Pursuant to the terms of the Joint Venture Agreement, the Joint Venture could terminate a defaulting partner's interest in the Joint Venture Agreement, upon giving the defaulting partner written notice specifying the default, and granting sixty (60) days to cure the breach. Pre-Trial Order, Uncontested Material Fact No. 8.

9. According to the terms of the Joint Venture Agreement, all notices to Exquisito relating to the Joint Venture Agreement were to be sent by certified mail to "Exquisito Services, Inc., Attn: President, 1620 Melpomene St., New Orleans, LA 70130." Pre-Trial Order, Uncontested Material Fact No. 9.

10. Some time prior to March 14, 1989, ARAMARK received information that, without ARAMARK's consent, Exquisito had assigned its interest in the Joint Venture Agreement to another entity, Exquisite Supreme Caterers, Inc., which was not a party to the Joint Venture Agreement. Defendants Exhibit "6."

11. ARAMARK was unwilling to consent, without more information, to any assignment by Exquisito of its interest in the Joint Venture Agreement, and no such information was forthcoming. Testimony of Michael C. Kelly.

12. Pursuant to the terms of the Joint Venture Agreement, on March 14, 1989, ARAMARK sent a certified-mail letter notifying Exquisito of its default and commencing the running of the cure period, addressed to "Exquisito Services, Inc., Attention: President," at Exquisito's address listed in the Joint Venture Agreement  The letter was subsequently returned to ARAMARK by the postal service because Exquisito's mail-forwarding address had expired. Defendants Exhibit "6."

13. In addition to sending a default letter by certified mail to the address listed in the Joint Venture Agreement, ARAMARK also sent a copy of the March 14, 1989 default letter, by certified mail, to Mr. Carlton H. Pecot of Exquisito Supreme Caterers and to Mr. William Dickerson at Granite Financial Services, and by facsimile to Mr. William Dickerson at Granite Financial Services. Defendants Exhibit "6."

14. The default letters to Mr. Carlton H. Pecot of Exquisite Supreme Caterers and to Mr. William Dickerson at Granite Financial Services were mailed in the ordinary procedures employed at ARAMARK, and were mailed on the same day as the letter to Exquisito, which was returned unclaimed. Testimony of Michael C. Kelly.

15. ARAMARK's notification to Exquisito of the breach based on the assignment of Exquisito's interest in the Joint Venture Agreement to Exquisite Supreme Caterers, Inc., conformed to the terms of the Joint Venture Agreement, and was sufficient under the Joint Venture Agreement. Joint Exhibit "1."

16. The fact that the certified-mail letter addressed to Exquisito was returned to ARAMARK by the postal service because Exquisito's mail-forwarding address had expired does not diminish ARAMARK's compliance with the terms of the Joint Venture Agreement. Joint Exhibit "1."

17. The words of the Joint Venture Agreement are clear; and the intent of the parties, that notices were to be sent to the addresses listed in the Joint Venture Agreement, is also clear. Joint Exhibit "1."

18. ARAMARK met and exceeded its obligation under the Joint Venture Agreement in order to notify Exquisito of its breach of the terms of the Joint Venture Agreement and to commence the running of the cure period, and to give Exquisito the opportunity to respond and cure the breach. The Joint Venture Agreement required no other action on the part of ARAMARK in order for the 60-day cure period to start running, other than mailing notification by certified mail to Exquisito's address as listed in the Joint Venture Agreement. Joint Exhibit "1."

19. By ARAMARK's sending a default letter by certified mail to the address listed in the Joint Venture Agreement, the cure period began running by April 1, 1989.

20. The 60-day cure period provided for by the terms of the Joint Venture Agreement completed running, at the latest, by June 1, 1989.

21. The date of termination of Exquisito's interest in the Joint Venture Agreement, June 1, 1989, is the date ARAMARK allegedly breached the Joint Venture Agreement.

22. Exquisito did not receive any payment from ARAMARK pursuant to the Joint Venture Agreement after June 1, 1989, upon the termination of Exquisito's interest in the Joint Venture. Trial testimony; *and see* Pre-Trial Order, Uncontested Material Fact No. 10.

23. By the latest, on July 5, 1989, Dickerson and Exquisito had actual knowledge (1) that Exquisito's interest in the Joint Venture Agreement was terminated on June 1, 1989, and (2) that Exquisito's participation as a partner in the Joint Venture was similarly terminated in the Concession Contract with NOPFMI. Defendants Exhibits "2" and "3."

24. Dickerson's actual knowledge of these events is confirmed in correspondence dated July 5, 1989, and July 19, 1989. Defendants Exhibits "2" and "3."

25. In response to a letter sent by Steven Chouest, Dickerson or his counsel telephoned Chouest on July 5, 1989, and discussed Exquisito's status with respect to the Joint Venture and its involvement in the NOPFMI Concession Contract. Defendants Exhibits "3."

26. Later that same month, July 1989, Mr. Dickerson again telephoned Stephen Chouest's office and requested that Chouest meet with Dickerson's attorney, Mr. William Aaron, "in order to meet and discuss the status of the Joint Venture and related issues." Defendants Exhibit "2."

27. After the Joint Venture terminated Exquisito's interest in the Joint Venture on June 1, 1989, and after the principals of Exquisito had actual knowledge of Exquisito's breach of the Joint Venture Agreement and termination of Exquisito's interest therein, as confirmed by the July, 1989 correspondences, on October 13, 1989, NOPFMI entered into a new contract with ARAMARK (the "October 13, 1989 Contract"), which by express terms terminated the 1983 Concession Contract. *See* Plaintiffs Exhibits, Pre-Trial Order, as amended by Order entered April 17, 2002.

28. Despite the actual knowledge of Exquisito and Dickerson regarding the termination of Exquisito's interest in the Joint Venture (at earliest by March, 1989, and the latest by July 5, 1989), and despite the fact that Dickerson had requested a meeting between NOPFMI and Dickerson's lawyer, Mr. William Aaron, in July, 1989, Dickerson did not file the present suit against ARAMARK based on alleged breach of the Joint Venture Agreement until October 13, 1999 -- over ten years after Exquisito's interest in the Joint Venture Agreement terminated.

29. Exquisito, Dickerson or Calrton Pecot at no time after March 14, 1989, contacted ARAMARK in response to the notification letters, or otherwise, to discuss the status of the Joint Venture, or Exquisito's interest therein. Testimony of Michael C. Kelly.

30. Plaintiffs' cause of action for breach of contract arising out of the termination of the Joint Venture Agreement is time-barred.

31. ARAMARK had reason to believe that Exquisito had assigned its interest in the Joint Venture, without obtaining prior written approval by ARAMARK. Defendants Exhibit "6."

32. Any assignment by Exquisito of its interest in the Joint Venture Agreement without prior written approval from ARAMARK was a breach of the Joint Venture Agreement. Joint Exhibit "1."

33. ARAMARK reasonably believed that as of July 5, 1989, the principals of Exquisito had actual notice of the default by Exquisito and of the termination of Exquisito's interest in the Joint Venture Agreement.

34. ARAMARK acted prudently and in compliance with the terms of the Joint Venture Agreement to protect its interest.

35. ARAMARK's actions in protecting its rights under the Joint Venture Agreement, in the manner prescribed by the Joint Venture Agreement, is not a breach of contract, much less a bad-faith breach of contract.

36. Exquisito's failure to communicate with ARAMARK is the cause of the present dispute.

37. Exquisito has suffered no damages as a result of the alleged contractual breach committed by ARAMARK.

38. Without proof of damages, an essential element of a breach of contract claim, Plaintiffs have no actionable claim.

39. Exquisito's obligations under the Joint Venture Agreement were for the provision of services, and only net profits are to be awarded as damages. Joint Exhibit "1."

40. Without expert testimony establishing lost future profits, and without proof of net profits, Plaintiffs have not proved any reasonably accurate estimate of any damages arising out of the alleged breach of contract, and any award is speculative.

41      Without an expert witness, Plaintiffs have not established with any degree of certainty the amount they actually received under the Joint Venture Agreement during the period of 1983-1989, much less any estimate as to prospective payments that may have been due under the Joint Venture Agreement had it not been terminated.

42.     Without proof of its costs and expenses at least as to Exquisito's past net profits, any determination for lost future net profits is speculative.

43      Plaintiffs have established no claim for consequential damages based on loss of business opportunity

44.     Any options to extend the Joint Venture Agreement were not in the contemplation of the parties at the time of contracting. Joint Exhibit "1."

45.     The obligations of all parties to the 1983 Concession Contract were extinguished in 1989, and there can be no claim for any claim for damages based on any profits earned by ARAMARK under the new terms of the October 13, 1989 Contract. A novation was effectuated by the October 13, 1989 Contract. Plaintiffs Exhibits, Pre-Trial Order, as amended by Order entered April 17, 2002.

46.     Plaintiffs have proved no damages.

47      Dickerson has no claim, personally, for any damages, because he is not a party to the Joint Venture Agreement. Joint Exhibit "1."

48.     Dickerson, as a principal of Exquisito, has no standing to pursue, as an individual, Exquisito's breach of contract claim, because he has not alleged or proved he suffered an injury separate from those of the corporation.

49.     Dickerson has not alleged or proved he suffered any damages personally.

50. Plaintiffs failed to mitigate their damages by failing to act reasonably to protect Exquisito's interests and prevent further damages and by failing make any other mitigation effort.

51. Exquisito failed to mitigate any alleged damages it could conceivably be entitled to under the Joint Venture Agreement, and Exquisito's damages should be reduced completely because Plaintiffs failed to mitigate Exquisito's damages and failed to act reasonably under the circumstances.

### PROPOSED CONCLUSIONS OF LAW

1. In this diversity action based on a Louisiana cause of action arising out of a Louisiana contract, the liberative prescriptive period applicable to Plaintiffs' state claim for breach of contract is ten (10) years *from the date that the contract was allegedly breached.* La. Civ. Code art. 3499; *Abdul-Alim Amin*, 706 F.2d at 640; *Loewer v. Texas Gas Transmission Co.*, 615 F.Supp. 1, 2 (W.D. La. 1984); *Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 (5th Cir 1983).

2. The terms of the Joint Venture Agreement entered into by Plaintiffs and ARAMARK control the Joint Venture relationship and form the law between the parties. La. Civ. Code. art. 1983; *Louisiana Nat'l Leasing Corp. v. Family Pools, Inc.*, 345 So.2d 480, 482 (La. 1977); *United States v. 926.787 Acres of Land, More or Less, In Iberia Parish, State of La.*, 227 F.Supp. 361, 364 (E.D. La 1964)

3. "In the absence of a conflict with law or public policy, it is competent for parties to contract as to how notice is to be given, and when they do, the giving of notice by a method

contracted for is sufficient whether or not it results in actual notice." 58 Am Jur 2d *Notice* § 31 (1988), *see Folds v. Protective Cas. Ins. Co.*, 26, 323 (La. App. 2nd Cir. 12/7/94), 647 So. 2d 1215, 1218; *and see Burge v. Allstate Ins. Co.*, 97-1087 (La. App. 5th Cir. 4/15/98), 710 So. 2d 1196, 1200.

    4.    The "established rule of strict construction [of contracts] does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written documents clearly expresses the intent of the parties." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994).

    5.    Exquisito had an obligation to maintain the accuracy of the address listed in the Joint Venture Agreement and was obligated to keep its mail-forwarding address current. La. Civ. Code arts. 2054, 2323 and 2002; *see* La. Civ. Code art. 1983 ("Contract must be performed in good faith.").

    6.    It is well established that damages are an "essential element" of a contract-based cause of action. *Bustamente v. Jefferson Parish Inspection & Code Enforcement*, 96-320 (La. App. 5th Cir. 10/1/96), 683 So.2d 822, 825.

    7.    Under Louisiana law, "[t]he party bringing suit has the burden of proving any damages suffered by it as a result of a breach of contract," and no recovery may be had until such proof is submitted. *L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc.*, 99-0354 (La App. 1st Cir. 6/23/00), 762 So.2d 1223, 1235, *writ denied*, 2000-2232 (La. 11/13/00), 775 So.2d 438; *Foreman v. Jordan*, 131 So.2d 796 (La. App. 3rd Cir. 1961).

    8.    In a breach of contract action, the plaintiff is entitled to recover the amount of loss he has sustained and the profit from which he has been deprived. La. Civ. Code art. 1995; *J.B.*

Case 2:00-cv-00049-MVL   Document 52   Filed 04/26/2002   Page 11 of 15

*Talley & Co., Inc. v. Vilaret Constr. Servs. Inc.*, 98-395 (La. App 3rd Cir. 10/7/98), 722 So.2d 9, 10-11, *writ denied*, 99-0374 (La. 3/26/99), 739 So.2d 798

9. The plaintiff in a breach of contract action must prove actual damages, and "[s]peculation and conjecture cannot be accepted as a basis for fixing loss of earnings or profits." *J.B. Talley & Co., Inc. v. Vilaret Constr. Servs. Inc.*, 98-395 (La. App. 3rd Cir. 10/7/98), 722 So 2d 9, 11, *writ denied*, 99-0374 (La. 3/26/99), 739 So.2d 798.; *Nat Harrison Associates, Inc. v. Gulf States Utilities Co.*, 491 F.2d 578, 587 (5th Cir. 1974). "While the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as to the extent of loss precludes any award." *J.B. Talley & Co.*, 722 So.2d at 11. At a minimum plaintiff's "evidence must furnish data for a reasonably accurate estimate of the amount of damages." *Nat Harrison Associates, Inc.*, 491 F.2d at 587.

10. Proving any reasonably accurate estimate of damages arising out of an alleged breach of contract is difficult without expert testimony establishing lost future profits, and without proof of net profits. *See, e.g., Mahayna, Inc. v. Poydras Center Associates*, 95-0932 (La. App. 4th Cir. 12/14/95), 665 So.2d 166, 168 (refusing to award lost profits where supported only by mere estimates of loss), *writs denied*, 96-0424, 96-0398 (La. 3/22/96).

11. The proper measure of lost profits is net loss, or gross profit minus expenses *Louisiana Smoked Products, Inc. v. Savoie Sausage and Food Products, Inc.*, 95-932 (La. App. 3rd Cir. 3/27/96), 673 So.2d 248, *aff'd in part*, 96-1716 (La. 7/1/96), 696 So.2d 1373.

12. Damages resulting from breach of contract for services are always based on lost net profits, not on the gross amount the provider of services would have been paid under the contract. *Spence v. Webster Parish Sch. Bd.*, 499 So.2d 217, 220 (La. App. 2nd Cir. 1986).

11

13. Testimony alone is an insufficient basis for determining future lost profits. *See Amonfo v. Tate*, 623 F.Supp. 513, 521 (E.D. La. 1985) ("A claim for lost profits based solely on the testimony of the injured party and unsubstantiated by other evidence does not constitute a reasonable certainty."), *aff'd*, 806 F.2d 260 (5th Cir. 1986).

14. In order to recover damages based on bad faith dealing, Plaintiffs must prove that ARAMARK acted in bad faith. La. Civ. Code art. 1996.

15. "An obligor is in bad faith if he intentionally *and* maliciously fails to perform his obligation," or in the case of actual or constructive fraud. La. Civ. Code art. 1997, comments (b) and (c) (emphasis added). "The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Bond v. Broadway*, 607 So.2d 865, 867 (La. App. 2nd Cir 1992), *writ denied*, 612 So.2d 88 (La. 1993). A breach of contract is not in bad faith where there is no evidence of motive of malice, even where the breach may "be characterized as expedient and self-serving." *E.B. Ludwig Steel Corp. v. C. J. Waddell Contractors, Inc.*, 534 So.2d 1364, 1371 (La. App. 5th Cir. 1988). Where there is an honest mistake as to actual rights or duties under a contract, bad faith breach will not be found. *Delaney v. Whitney Nat'l Bank*, 96-2144 (La. App. 4th Cir. 11/12/97), 703 So.2d 709, 718, *writ denied*, 98-0123 (La. 3/20/98), 715 So.2d 1211.

16. Plaintiffs claim for damages based on loss of business opportunity is a claim for consequential damages, and damages for loss of business opportunity are not awarded for simple breach of contract. La. Civ. Code arts. 1995 and 1996; W*right Bros. Corp. v. Colomb*, 517 So.2d 1194, 1196 (La. App. 4th Cir. 1987), *writ not considered*, 519 So.2d 110 (La. 1988). Rather, damages in a good-faith breach of contract action are limited to those that were foreseeable at the

time the contract was made. La. Civ Code art. 1996; *First Commonwealth Corp. v. Hibernia Nat'l Bank of New Orleans*, 891 F. Supp 290, 297 (E. D. La. 1995), *aff'd*, 85 F.3d 622 (5th Cir. 1996).

17.     Damages for breach of contract are limited to foreseeable damages, *i.e.*, those that were contemplated by the parties at the time of contract. La. Civ. Code art. 1995; *Harry E. Wood and Assocs. v. Charity Hosp. of Louisiana at New Orleans*, 462 So.2d 137, 139 (La. 1985). "[T]he concept of lost profits refers only to the loss of profits which would have been earned on the particular contract. Recoverable prospective profits are limited to those which might have been made if the particular contract had been performed, and during the period for which it was to run." 22 Am. Jur. 2d *Damages* § 631 (1988), p. 695.

18.     "Novation is the extinguishment of an existing obligation by the substitution of a new one." La. Civ. Code art. 1987. Novation may occur "where the intent of the obligee is clearly indicated" or where the intent of the parties, the character of the transaction, the facts and circumstances surrounding the transaction and the terms of the agreement itself reveal a desire to effect a novation." *Wainer v. A.J. Equities, Ltd.*, 984 F.2d 679, 683-684 (5th Cir. 1993).

19.     Only parties to a contract may claim damages arising out of its breach. La. Civ. Code art. 1985 ("Contracts may produce effects for third parties only when provided by law.").

20.     Under Louisiana law, a corporation's principal has no standing to pursue, as an individual, the corporation's breach of contract claim, unless the principal proves he suffered an injury separate from those of the corporation. *Eximco, Inc. v. Trane Co.*, 737 F.2d 505, 511 (5th Cir. 1984), *abrogated on other grounds by 9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989); *see Gendusa v. City of New Orleans*, 93-1527 (La. App. 4th Cir. 2/25/94), 635 So.2d

1158, 1162-1163, *writ denied*, 94-1508 (La. 9/23/94), 642 So.2d 1296. Unless an officer or shareholder can prove an injury suffered by them personally, "neither officers nor stockholders . . can maintain an action to redress an injury to a corporation even though the value of their stock is impaired as a result of the injury." *Gregory v. Mitchell*, 634 F.2d 199, 202 (5th Cir. (Ala) 1981); *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893 (5th Cir. (Tex) 1968) (involving an action for breach of contract and anti-trust violations).

21. "The doctrine of mitigation of damages applies to Louisiana contract law." *Julius Cohen Jeweler, Inc. v. Succession of Jumonville*, 506 So.2d 535, (La. App. 1st Cir.) (citing *Unverzagt v. Young Builders, Inc.*, 252 La. 1091, 1096, 215 So.2d 823, 825 (1968)), *writ denied*, 511 So.2d 1155 (La. 1987). "The theory of a 'duty to mitigate' is merely that avoidable consequences of a breach of contract are not recoverable." *Electrodata Mfg.Corp. v. Domed Stadium Hotel, Inc.*, 362 So.2d 1122, 1126 (La. App. 4th Cir.), *writ denied*, 365 So.2d 825 (La. 1978); *Graf v. Jim Walter Homes, Inc.*, 97-1143 (La. App. 1st Cir. 5/15/98), 713 So.2d 682, 692; La. Civ. Code art. 2002.

22. "[T]he law will not allow one to sit idly by and see his property destroyed through forces negligently set in motion by another, and then collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster." *Jones v. Celotex Corp.*, 683 F.Supp. 555, 559 (E.D. La. 1987), *appeal dismissed*, 857 F.2d 273 (5th Cir. 1988), *cert. denied*, 493 U.S. 900, 110 S.Ct. 260 (1989).

Respectfully submitted, this 26th day of April, 2002

*[signature]*

E. FREDRICK PREIS, JR. (10704)
CRAIG L. CAESAR, T.A. (19235)
ANNE D. LE JEUNE (24829)
McGLINCHEY STAFFORD
Professional Limited Liability Company
643 Magazine Street
New Orleans, LA 70130
Telephone (504) 586-1200
Fax (504) 596-2800

**ATTORNEYS FOR ARAMARK SPORTS AND ENTERTAINMENT SERVICES, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has this day been forwarded to all counsel of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed this 26th day of April, 2002.

*[signature]*
Anne D. Le Jeune

\326610\1