FILED
U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LA

EASTERN DISTRICT OF LOUISIANA 2002 MAY -1 PM 2:31

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| EXQUISITO SERVICES INC. | * | CIVIL ACTION |
| AND WILLIAM DICKERSON | * | |
| PLAINTIFFS | * | |
| | * | |
| VERSUS | * | CASE # 00-0049 |
| | * | |
| ARAMARK SPORTS AND | * | SECT. "S" |
| ENTERTAINMENT SERVICES, INC. | * | |
| AND JOSEPH NEUBAUER | * | MAG. DIV. 5 |
| DEFENDANTS | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## PRE-TRIAL BRIEF IN SUPPORT OF PLAINTIFFS' CLAIMS

**MAY IT PLEASE THE COURT:**

The following are the pertinent facts, issues, and arguments in support of the plaintiffs' claims:

**PERTINENT FACTS:**

On or about December 13, 1983, the parties, Exquisito Services, Inc., and Leisure Services, Inc., now ARAMARK Sports and Entertainment Services, Inc. (called ARAMARK), formed a Joint Venture/Partnership Agreement for the purpose of providing the food, beverage, catering and related concession services at the New Orleans Convention Center (the "Center") in accordance with the Request for Proposal issued by the New Orleans Exhibition Hall Authority. The Joint Venture signed on the same day a Food/Beverage Concession Contract for the New Orleans Convention Center between the Joint Venture and the New Orleans Public Facility Management, Inc., ("NOPFMI"). Pursuant to which the Joint Venture was to provide services to the Convention Center.

Fee_____
Process_____
X Dktd_____
CtRmDep._____
Doc. No._____

Section VII, F of the Joint Venture/Partnership Agreement states that "no party to this Agreement may assign, pledge, transfer or otherwise dispose of its interest in the Joint Venture or any assets thereof or in the Concession Contract without the written approval of the other partner".

In the spring of 1989, ARAMARK learned that Exquisito was allegedly SEEKING TO ASSIGN ITS RIGHTS under the Joint Venture Agreement to a third party. Based upon this alleged "seeking to assign its rights under the Joint Venture/Partnership Agreement to an alleged third party, ARAMARK attempted to terminate the Joint Venture Agreement pursuant to its Section VII, F.

An alleged attempt to assign a contractual right under the Joint Venture Agreement is not in fact an assignment and therefore is not a breach of the said Joint Venture/Partnership Agreement.

**ISSUES:**

I.  Whether an alleged attempt to breach the Joint Venture/Partnership Agreement was a breach in fact?

II.  Whether the Joint Venture/Partnership Agreement continues to date?

III.  Whether plaintiffs are entitled to all their rights under the Joint Venture/Partnership Agreement since there was no breach?

**ARGUMENT ON ISSUE I:**

An attempt is the act or an instance of making an effort to accomplish something, especially without success. **Black's Law Dictionary, Deluxe, Seventh Edition, p. 123.**

There is no prohibition in the Joint Venture Agreement against an attempt to assign a partner's rights thereunder to a non-approved third party.

2

Inasmuch as defendant ARAMARK alleges that it took the actions it did to terminate the Joint Venture Agreement with the plaintiffs based on its learning that plaintiffs <u>were seeking to assign</u> its rights under the Joint Venture Agreement to a third party and not having learned that its partner, Exquisito, had assigned its rights under the Agreement to a third party, there was no breach. The Joint Venture Agreement specifically prohibits an assignment of rights as a breach. Justice Marvin, writing for the Court of Appeal of Louisiana, Second Circuit, in Stewart v. Wal-Mart Stores, Inc., 542 So.2d 1166 (La. App. 2 Cir. 1989) says:

> Interpretation of contracts is governed by CC 2045-2057, as revised in 1984. Former CC Art. 1945-1962 (1870). *Allen v. Burnett,* 530 So.2d 1294 (La.App.2d Cir. 1988).
> When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. CC Art. 2046.
>
> The comments thereunder state this article is new, but does not change the law. The principle of interpreting laws found in former CC Art. 13 (1870) is applied to contracts and the substance of former CC Art. 1945(3) (1870) is contained in the 1984 revision.
> When the law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit. La. CC Art. 13 (1870). Legal agreements having the effect of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules: ...
> Third-That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences; ... CC Art. 1945 (1870) in part.
> Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. CC Art. 2050.
>
> This article also reproduces the substance of CC Art. 1955 (1870) and does not change the law. See Comments, CC Art. 2050.

## ARGUMENT ON ISSUE II:

Section VI, C of the Agreement states that:

C.    In lieu of permitting a defaulting partner to continue as a partner if such default has not been cured for sixty (60) days, the Joint Venture, at any time any default exists, may terminate the interest of the defaulting partner under this Agreement by causing an independent certified public accountant to determine the value of the capital account of the defaulting party and by paying such amount to the partner, less any amounts owed to the Joint Venture or other party. In making this determination, the independent certified public accountant shall not give any value to good will or other intangible items, or to the value of the Concession Contract.

ARAMARK attempted to terminate the Agreement by notifying Exquisito of its alleged breach by allegedly seeking to assign its rights under the Joint Venture to a third party. There being no breach, in fact, there was no termination of the said Agreement and it continues to this day.

In fact, ARAMARK and The New Orleans Convention Center operate to this very day under the initial contract of December 13, 1983. That Food Services Concession Contract has never been subjected to another Request for Proposal issued by the New Orleans Exhibition Hall Authority. That said concession Contract has never been revised to include another minority, female or disadvantaged person.

**ARGUMENT ON ISSUE III:**

It flows as a natural effect that there being no breach and therefore a continuation of the Joint Venture/Partnership Agreement to this day that plaintiffs are entitled to all of its benefits under the terms and conditions of said Agreement.

**CONCLUSION:**

The plaintiffs never breached the Joint Venture/Partnership Agreement. The Joint Venture/Partnership Agreement was never terminated, as there was never a breach thereof.

Inasmuch as there was never a breach of said Agreement and no termination, it continues to this day. And, therefore, plaintiffs are entitled to all the benefits the Agreement provides for them thereunder.

Respectfully Submitted,

BY: _____

**Linda Ritzie (#20342)**
**3408 North Beltline Drive**
**Mobile, AL 36617**
**(251) 452-3517**

**Attorney for Exquisito Services, Inc. and**
**William Dickerson**

## CERTIFICATE OF SERVICE

I, Linda Ritzie, do hereby certify that a copy of this Pre-Trial Brief in Support of Plaintiffs' claims was served on the defendants by U.S mail, Postage prepaid, a copy to their attorney of record, E. Frederick Preis, Jr., Craig L. Caesar, T.A., and McGlinchey Stafford, PLLC at 643 Magazine Street, New Orleans, Louisiana 70130.

Mobile, Alabama this 26th day of April, 2002.

_____
**Linda Ritzie**

5